[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14797
Non-Argument Calendar

_____

Agency No. A95-254-292

FERNANDO DE JESUS RESTREPO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 20, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Fernando De Jesus Restrepo, proceeding pro se, petitions for review of the

Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's

("IJ") determination denying him asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition.

## I. BACKGROUND

Restrepo, a native and citizen of Colombia, entered the United States on September 7, 2002 as a non-immigrant visitor with authorization to remain until March 16, 2003. Restrepo remained in the United States beyond the authorized date. On June 12, 2003, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging Restrepo with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

In response, Restrepo filed an application for asylum, withholding of removal and CAT relief, claiming that he suffered persecution from the Revolutionary Armed Forces of Colombia ("FARC") because of his political opinion. In either his application or hearing testimony, Restrepo set forth these events. Restrepo was a member of the Conservative Party in Colombia and a related organization called Equipo Colombia. Restrepo was active as a community leader in political and health campaigns and voter recruitment, working under the direction of the executive secretary. Restrepo was also employed by the Colombian government as a paramedic at a hydroelectric power plant, where he

2

treated military guards, plant employees and their families. According to Restrepo, the FARC designated him an enemy because he treated military personnel and others at the government-owned power plant.

In 2000, Restrepo received a series of 15 or 16 phone calls from the FARC threatening to kill him because he provided medical treatment to the military and worked for the government. The FARC told Restrepo that they were tracking his movements. People in the community told Restrepo that he was a target on a FARC hit list. In May 2000, the FARC killed two of his co-workers.

On August 17, 2000, Restrepo received another threatening phone call from the FARC. The next day, the FARC took over the power plant and surrounded the company camp where the employees and their families lived. Restrepo was present during the attack, witnessing explosions and the murder of one of his co-workers. The FARC forced the employees and their families to leave the camp. That day, Restrepo quit his job at the power plant.

Restrepo and his family went to live with relatives in Medellin, where Restrepo worked as a sales manager for a manufacturing company and continued his Conservative Party activities. FARC members located Restrepo in Medellin and threatened to kill him and his family. Restrepo's children were forced to suspend their studies at the university for six months due to the threats.

3

In April 2001, Restrepo came to the United States, hoping that conditions would "cool off" in Colombia if he moved away for a while. He did not apply for asylum upon entering the United States because he intended to return to Colombia. Restrepo explained that he wanted to return to Colombia because his wife and children remained there, he owned property there, and he enjoyed the job he had left behind.

In October 2001, Restrepo returned to Colombia. After his return, Restrepo began receiving threats from the FARC. He changed his phone number several times, but FARC members continued to locate and threaten him. Restrepo stayed in Colombia for six months, receiving approximately nine threatening phone calls. Restrepo decided to return to the United States after he heard rumors that the FARC was upset with his return to Colombia.

Restrepo's four children continue to live in Medellin and have returned to school. His wife also lives in Medellin, but has twice come to the United States to visit him. Neither Restrepo nor his family has ever been physically harmed by the FARC while in Colombia. The executive secretary under whom Restrepo worked for the Conservative Party still lives in Colombia.

Restrepo submitted documents corroborating his claim that he was forced to leave his paramedic job and that his children had to suspend their university studies

due to FARC threats. The government submitted the 2003 United States Department of State Country Reports on Human Rights Practices in Colombia ("Country Report"). According to the Country Report, the FARC does not respect the injured or the medical personnel who treat them and has threatened and murdered doctors and nurses and killed enemy combatants receiving medical care.

In an oral decision, the IJ denied asylum, withholding of removal and CAT relief. The IJ found that Restrepo's testimony was "to a certain degree" plausible but declined to credit Restrepo's claim that the FARC continued to look for him to kill him after Restrepo left the power plant. The IJ alternatively concluded that Restrepo was statutorily ineligible for asylum because he had failed to prove either past persecution or a well-founded fear of future persecution. The IJ also found that Restrepo was not eligible for CAT relief.

Restrepo appealed the decision to the BIA. In a short order, the BIA affirmed the IJ's decision. The BIA stated that it need not address the IJ's credibility finding because, even if credible, Restrepo had failed to meet his burden of proof for asylum, withholding of removal and CAT relief. Restrepo timely filed a petition for review.

## II. DISCUSSION

### A. Asylum

An alien who arrives in or is present in the United States may apply for asylum.  See 8 U.S.C. § 1158(a)(1).  The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee."  See 8 U.S.C. § 1158(b)(1)(A).  A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving statutory "refugee" status.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

To carry this burden of proving statutory "refugee" status, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution.  8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.  In order to be well-founded, a fear of persecution must be both "subjectively genuine and objectively reasonable."  Al Najjar, 257 F.3d at 1289.  A finding of past persecution creates the presumption of a well-founded fear of persecution and shifts the burden to the government to demonstrate that either conditions have changed in the alien's home country, or the alien could avoid such

6

persecution by relocating in the home country and that relocation is reasonable. 8 C.F.R. § 208.13(b)(1).

**B.      Restrepo's Claim**

Based on the record as a whole, we conclude that the IJ's denial of Restrepo's asylum application is supported by substantial evidence. With regard to past persecution, the FARC's harassment of Restrepo does not rise to the level of persecution. "Although the INA does not expressly define 'persecution' for purposes of qualifying as a 'refugee,' we have discussed other circuits' holdings that 'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quoting Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) and holding that menacing phone calls and threats to family members and other members of the group do not rise to level of past persecution).

Restrepo received threatening phone calls and was forced to leave his job at the power plant and relocate to Medellin. The FARC never physically harmed Restrepo or even attempted to harm him. Such threats and acts of intimidation, without any physical harm, do not rise to the level of past persecution. See

7

Sepulveda, 401 F.3d at 1231 (concluding that petitioner did not show past persecution where she received threatening phone calls, her brother was threatened in person and a bomb was placed in her work mailbox).

The finding that Restrepo did not have a well-founded fear of future persecution is also supported by substantial evidence. A well-founded fear of persecution may be established by showing (1) past persecution that creates a presumption of a well-founded fear of future persecution, (2) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which he is a part. 8 C.F.R. § 208.13(b)(1), (2), (3)(i).

Because the FARC's harassment of Restrepo does not amount to past persecution, Restrepo is not entitled to a presumption of a well-founded fear of future persecution. Nor does the record compel the conclusion that there is a reasonable possibility that Restrepo will suffer persecution if he returns to Colombia. While Restrepo's subjective fear of persecution may be genuine, there is substantial evidence to support the finding that it is not objectively reasonable. See Al Najjar, 257 F.3d at 1289 (explaining that, in order to be well-founded, a fear of persecution must be both "subjectively genuine and objectively

8

reasonable"). Apart from telephone threats, the FARC has taken no action against Restrepo or his family since he left his position as a paramedic and moved to Medellin. Restrepo lived and worked as a sales manager in Medellin for over six months without being harmed. After entering the United States, Restrepo voluntarily returned to Colombia for another six months and again was not harmed. His wife and children have continued throughout to live in Medellin and have not been harmed. The executive secretary of Equipo Colombia, under whom Restrepo worked for the Conservative Party, also continues to live in Colombia. Given these facts, we are not compelled to conclude that Restrepo has a well-founded fear of persecution.

Given Restrepo's failure to carry his lower burden of proof with regard to asylum, he is also ineligible for withholding of removal. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (noting that, where an applicant fails to establish a claim of asylum on the merits, his other claims of withholding of removal under the INA or for CAT relief generally fail).[1]

**PETITION DENIED.**

---

[1]On appeal, Restrepo did not raise any argument challenging the denial of CAT relief and, therefore, has abandoned that issue. See Sepulveda, 401 F.3d at 1228 n.2.