[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2007
THOMAS K. KAHN
CLERK

No. 06-14116
Non-Argument Calendar
_____

BIA No. A79-453-908

EMILJANO TALO,
a.k.a. Alfred Sula,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 29, 2007)**

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Emiljano Talo, a native and citizen of Albania proceeding pro se, petitions

for review of the final order of the Board of Immigration Appeals ("BIA")

adopting and affirming the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), INA §§ 208, 241, 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). On appeal, Talo argues the IJ clearly erred by denying his asylum application because he established past persecution and a well-founded fear of future persecution based on his membership in, and his family's political activities associated with, the Democratic Party. The IJ made an adverse credibility finding as to Talo's testimony and found that Talo had knowingly filed a fraudulent asylum application. Based on the adverse credibility determination, and after consideration of the evidence Talo submitted in support of his application, the IJ denied asylum.[1] After careful review, we deny the petition for review.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we review the IJ's decision as well." Id. Here, the BIA expressly adopted the IJ's

_____

[1]Because we conclude Talo did not meet his burden to establish his eligibility for asylum, he is precluded from obtaining withholding of removal and CAT relief, as these forms of relief require a higher standard of proof. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001).

2

decision, without elaborating further, other than to state that it agreed with the IJ's findings. Therefore, we review the IJ's decision.

The IJ's factual determinations are reviewed under the substantial evidence test, meaning that we must "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotations and citations omitted).

> [T]he IJ must offer specific, cogent reasons for an adverse credibility finding. Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence. A credibility determination, like any fact finding, may not be overturned unless the record compels it.

Id. at 1287 (citations and quotations omitted). "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application" when there is no other evidence of persecution. Id. However, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by the asylum applicant. Id. The "IJ must consider all the evidence introduced by the applicant." Id. (emphasis in original).

Here, the IJ made an explicit adverse credibility finding without reaching the issue of Talo's statutory eligibility for asylum, withholding of removal, and relief

3

under the CAT. The IJ gave specific, cogent reasons for his credibility determination, including (1) inconsistencies between Talo's asylum hearing testimony, asylum application, and his sworn statements at his airport and credible-fear interviews; (2) the Forensic Document Laboratory's ("FDL") report stating that some of the documents Talo submitted in support of his application appeared to be fraudulent; and (3) the evidence of country conditions in Albania undermined Talo's claimed fear of future persecution. We consider each of these reasons in turn.

First, substantial evidence supports the IJ's finding that there were material inconsistencies between Talo's asylum hearing testimony, his asylum application, and his sworn statements at his airport and credible-fear interviews, including his statements concerning his whereabouts from 1998 until 2002. The inconsistencies regarding Talo's whereabouts cast doubt on whether he ever returned to Albania after he traveled to Greece, as he claimed. Moreover, Talo gave differing reasons for coming to the United States. At his airport interview, Talo stated that he came to the United States because it was his dream, but he did not indicate that he feared he would be killed in Albania, or that he had ever been physically harmed there. At his credible-fear interview, Talo stated that he would be killed in Albania, but when asked whether anyone in his family had ever been arrested or ordered detained, he reported only his father, in that his father was sent to a concentration

4

camp. Talo did not mention that he had been detained by the secret police. In his written declaration, Talo stated that, after a June 12, 2002 explosion that damaged his house and injured his mother, he decided to leave Albania permanently, or he would be killed by members of a secret police force, yet he never mentioned this incident at his airport or credible- fear interviews. The IJ gave specific, cogent reasons for his adverse credibility finding and substantial evidence supports his decision.

Because the denial of asylum and withholding of removal cannot be based solely on an adverse credibility determination if the applicant offered "other evidence of persecution," we must next consider whether the IJ properly considered the record evidence. See Forgue, 401 F.3d at 1287-88. The other evidence offered by Talo included (1) Talo's father's death certificate; (2) Talo's father's Democratic Party of Albania ("DPA") membership card; (3) Talo's mother's DPA membership card; and (4) several letters from the Association of the Formerly Politically Persecuted.

The IJ considered the documents and noted that the FDL had reported that some of the documents, such as the membership cards, were not genuine. The FDL report showed that: (1) Talo's father's and mother's DPA membership cards did not conform to known samples and were probably not what they purported to be; (2) the letters from the Association of the Former Politically Persecuted could

5

not be authenticated; (3) Talo's father's death certificate and Talo's birth certificate could not be authenticated; and (4) the absence of diacritical marks on the documents from Albania, including the membership cards, was "highly unusual" because such marks could change the inflection or meaning of words or symbols. These documents were central to Talo's asylum claim because his entire claim is based on his family's alleged history of persecution by the Communists and membership in the Democratic Party. On this record, substantial evidence supports the IJ's determination that Talo did not meet his burden to show that the IJ's adverse credibility determination was not supported by the specific and cogent reasons the IJ provided in his findings.

Finally, substantial evidence supports the IJ's determination that the evidence of country conditions in Albania undermined Talo's asylum claim. According to the May 2001 Albania Profile of Asylum Claims and Country Conditions, it is "highly unlikely . . . that many applicants [who claimed mistreatment by the Communists] will have credible claims to political persecution." Talo argues that Amnesty International and Human Rights Watch have acknowledged the existence of problems between opposition groups and the Albanian government, but this argument is unavailing because we cannot consider evidence that was not previously brought before the BIA. See Al Najjar, 257 F.3d at 1282 (holding that we do not have "authority to step outside of the

administrative record"). The only evidence regarding country conditions in the record is the Albania Profile of Asylum Claims and Country Conditions and it does not support Talo's claim of persecution, either past or future, nor does its establish that the IJ's specific and cogent reasons for his adverse credibility determination were insufficient.[2]

Based on the foregoing, the IJ's finding that Talo's testimony was not credible is supported by substantial evidence, and nothing in the record, including the evidence Talo submitted in support of his asylum application, compels us to reverse the IJ. Accordingly, we must deny the petition for review.[3]

**PETITION DENIED.**

---

[2]Because the IJ denied asylum based on an adverse credibility determination and after a review of all of the evidence submitted by Talo in support of asylum, and we affirm that determination, the IJ did not consider, and we do not reach, the wholly separate issue of whether Talo satisfied his burden to establish past persecution or a well-founded fear of future persecution. The adverse credibility determination, alone, was sufficient to deny Talo's application. See Forgue, 401 F.3d at 1287 (holding that where there was no other evidence of persecution, "an adverse credibility determination alone may be sufficient to support the denial of an asylum application").

[3]On appeal, Talo's brief does not address the IJ's finding that his asylum application was frivolous. Therefore, he has abandoned any claim with respect to the IJ's frivolity finding. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (concluding that where the petitioner fails to raise arguments regarding an issue on appeal, that issue is deemed abandoned).