[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14817
Non-Argument Calendar

_____

Agency No. A98-566-079

YING LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 16, 2009)**

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

In this case, the Board of Immigration Appeals ("BIA") affirmed the decision of the Immigration Judge ("IJ") ordering the removal of petitioner Ying Lin and dismissed her appeal. She now petition's this court for review. Her petition questions whether substantial evidence supports the BIA's decisions that she failed to make out a case for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the U.N. Convention Against Torture ("CAT").

Lin is a native and citizen of China. She arrived in the United States on January 31, 2005 at the Claexico, California port of entry without valid entry documents and was immediately taken into custody. She expressed a fear of returning to China, so, on May 4, 2005, an asylum officer interviewed her. The officer found that she had a credible fear of persecution. The same day, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Lin with removability under the INA. On May 17, 2005, she appeared for a master calendar hearing, conceded her removability, and asked for asylum, withholding of removal under the INA and CAT protection. On June 7, 2006, she filed a formal applications for such relief.

An IJ considered the merits of Lin's applications at a hearing convened on August 21, 2006. The IJ described the events providing the basis of Lin's applications, as reflected in Lin's testimony, as follows:

2

[Lin's] applications are based on a strange situation that occurred in her household [in June 2004]. Her mother . . . became addicted to gambling and ran up a debt of []30,000 yuan to the casino owner who happened to also be a police officer and the brother of some official of some importance. This casino owner was known as Brother Nine. . . .

When the mother didn't pay the gambling debt, Brother Nine brought four of his thugs to the family house. . . . The thugs knocked the furniture around, broke things, and . . . threatened generally. They also warned [Lin's] parents that the interest rate would be extortionate and it would very quickly amount to a huge sum. When the parents said that they could not pay the money Brother Nine noticed [Lin] and stated is that your daughter? When . . . told that she was . . . he said . . . I'll forget the debt if you'll let me marry her.

The parents said that was acceptable to them and they didn't much care that [Lin] didn't want to do it. She . . . consider[ed Brother Nine] to be a thug. . . . [Brother Nine] couldn't marry her right away because the marriage age in that province was 22 and she was not 22 at the time. . . . In August of 2004, Brother Nine came to the house when [Lin] was there alone . . . and tried to rape [her]. . . [She] was able to fight him off. She pulled a pair of scissors and threatened to kill herself and . . . he backed off. But he still did want to marry her.

[Lin] reported this incident to the police. [They refused to] help . . . and also advised her that [Brother Nine] would be a good person to marry because he was important and wealthy. She, also, talked to . . . her father's uncle . . . the elder in the family. He . . . made arrangements with a snakehead . . . to smuggle her to the United States.

The snakehead was successful. At the time of the hearing, Lin was residing with a cousin in Claremont, Florida.

The IJ denied the applications for asylum, withholding of removal, and CAT protection and ordered her removal. He found Lin's testimony credible, but

3

concluded that the harm Lin had experienced or would experience if returned to China did not involve a protected ground. Rather, the harm was "entirely a personal matter between her, her family and . . . Brother Nine." The IJ acknowledged that Lin claimed to be a member of a particular social group consisting of "lower class women or women in a rural area or women who were not treated well by their families," but held that Lin was not a "refugee" under the INA because the INA did not recognize a protected ground membership in such a social group. Accordingly, Lin had not demonstrated a nexus between the harm she feared and a protected ground and thus was not entitled to asylum or withholding of removal.

The IJ denied Lin's application for CAT relief because, in the IJ's view, involuntary marriage could not, standing alone, constitute torture. Moreover, even though Lin asserted that Brother Nine and his brother had power beyond their province, an assertion she could not know to be true, the IJ found that it was extremely unlikely that Brother Nine would have the ability to harm her throughout China; she could escape from him by relocating inside China.

Lin appealed the IJ's order of removal to the BIA, and on July 29, 2008, it adopted and affirmed the IJ's decision. She thereafter filed the petition now before us.

4

In her brief, Lin argues that the IJ erred in finding that she did not belong to a particular social group. She asserts that she was raped and forced to flee China to avoid forced marriage on account of her membership in the group of "unmarried women in a lower social class or in a rural area." Although her encounter with Brother Nine was the result of an unpaid gambling debt, Brother Nine would not have targeted her unless she was a single, rural woman without the ability to protect herself. She therefore describes her case as a "mixed motive" case.

We review the BIA's decision as the final judgment, unless the BIA has expressly adopted the IJ's decision. Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). In that case, we review the IJ's decision as well. Id. Here, because the BIA expressly adopted the IJ's decision, we review the decisions of both the IJ and the BIA.

We review the IJ's factual determinations under the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotations and citations omitted). We must "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (internal quotations omitted). Under this test, we view "the record evidence in the light most favorable to the [IJ's] decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir.

5

2004) (en banc). Accordingly, to reverse the IJ's decision, we "must find that the record not only supports the [decision], but compels it." Ruiz, 479 F.3d at 765 (internal quotations omitted).

The Secretary of DHS has discretion to grant asylum if the alien meets the definition of "refugee," as defined by 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as:

> any person who is outside any country of such person's nationality, or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory ''refugee'' status, and thereby establishing asylum eligibility. Al Najjar, 257 F.3d at 1284. "To establish asylum [eligibility] based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir.2006). "To establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." Id. (internal and quotation marks omitted). A showing of past

6

persecution creates a rebuttable presumption of a well-founded fear of future persecution. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005).

To qualify for withholding of removal, an alien must show that if returned to her country, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3); 8 U.S.C. § 1231(b)(3). If, as here, the alien is unable to meet the standard of proof for asylum, she is generally precluded from qualifying for withholding of removal. Al Najjar, 257 F.3d at 1292-93.

To qualify for CAT relief, an applicant must meet standards more stringent than those for asylum eligibility. Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007). The applicant carries the burden of proof to establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1239 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(2)) (internal quotations omitted).

We conclude that substantial evidence supports the IJ's finding, adopted by the BIA, that a nexus did not exist between the attempted involuntary marriage and rape and a protected ground, in that the testimony Lin gave did not show that she had been targeted on account of her membership in a particular social group. The involuntary marriage was for no reason other than repayment of her mother's

7

gambling debt. As for Lin's application for CAT relief, Lin's statements in her asylum application and at the removal hearing demonstrate that she could safely relocate within China.

PETITION DENIED.