[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 7, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-16394

_____

Agency Docket No. A77-911-547

CHESNEL FORGUE,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 7, 2005)**

Before BARKETT and HULL, Circuit Judges, and EDENFIELD[*], District Judge.

HULL, Circuit Judge:

Chesnel Forgue, proceeding pro se, petitions for review of a final order of

_____

[*]Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

the Board of Immigration Appeals ("BIA"), which affirmed, without opinion, a decision of the Immigration Judge ("IJ") denying Forgue's claims for political asylum, withholding of removal under the Immigration and Nationality Act ("INA"),[1] and relief under the United Nations Convention on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). For the reasons discussed below, we affirm the BIA's decision.

## I. BACKGROUND

Forgue, a Haitian national, entered the United States illegally on February 15, 2001. He later filed applications for asylum, withholding of removal, and protection under Article 3 of the CAT, claiming he had suffered persecution in Haiti because of his political activities. Forgue told the IJ that he allowed political candidates to speak at his family farm in Haiti. In addition, he permitted a Senate candidate for the "OPL" party to use his truck to reach voters in outlying areas.

Forgue also stated that he suffered persecution as a result of his work as an election monitor. Forgue testified that he served as a polling official for the May 2000 election in Haiti. He told the IJ that a mayoral candidate from the *Fanmi*

---

[1] Because Forgue's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), this case is governed by the permanent provisions of the INA, as amended by the IIRIRA. Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

*Lavalas* party known as "TiPierre," along with members of the candidate's entourage, demanded to vote at the polling location Forgue had been assigned to monitor. Forgue explained that he turned the individuals away because they were not at their assigned polling location. Several days after the election, Forgue claimed he was doused in acid by TiPierre for not allowing him to vote.

According to Forgue, his troubles continued as the November 2000 election approached. TiPierre learned that Forgue had granted a member of the OPL the use of his truck during the May 2000 election. TiPierre insisted on being allowed to use the same vehicle for his own campaign efforts. When Forgue refused, TiPierre threatened him with serious harm. Sometime after this incident, Forgue testified he fled Haiti after TiPierre and a group of his supporters burned his home and beat up his son. Forgue told the IJ that he fears that if he returns to Haiti he will be harmed by members of TiPierre's *Fanmi Lavalas* party.

The IJ rejected Forgue's claims because he found that Forgue had not provided credible testimony. Forgue testified that his work as an election monitor was the reason he was attacked with acid. However, Forgue never mentioned these significant events in his asylum application. He also did not mention in his application that *Fanmi Lavalas* members physically assaulted his son. During his interview before an asylum officer, he likewise failed to make any reference

3

whatsoever to these terrible acts. It was not until Forgue's hearing before the IJ that he first mentioned these events.

The IJ denied Forgue's application after making the adverse credibility determination and the order was later affirmed by the BIA without opinion on November 28, 2003.[2] This appeal followed.

## II. STANDARD OF REVIEW

We review the IJ's factual determinations under the substantial evidence test. D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 817-18 (11th Cir. 2004); Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Under this highly deferential test, we "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (internal quotation marks and citations omitted). "Thus, we do not engage in a de novo review of factual findings by the [IJ]. Similarly, we cannot find, or consider, facts not raised in the administrative forum, nor can we reweigh the evidence from scratch." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), petition for cert. filed, (U.S. Oct. 28, 2004) (No. 04-7944) (internal quotation marks and citations omitted).

---

[2] Because the BIA affirmed the IJ's order without opinion, the IJ's decision constitutes the final agency determination to be reviewed by this Court. Gonzalez-Oropeza, 321 F.3d at 1333.

4

Furthermore, "[u]nder the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id.

As with other factual findings, "[c]redibility determinations likewise are reviewed under the substantial evidence test." D-Muhumed, 388 F.3d at 818 (citing Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002)). That is, "[t]he trier of fact must determine credibility, and this court may not substitute its judgment for that of the [IJ] with respect to credibility findings." Id. (citing Vasquez-Mondragon v. INS, 560 F.2d 1225, 1226 (5th Cir. 1977)).

### III. DISCUSSION

Because this case revolves around the IJ's adverse credibility determination, we first discuss what an alien needs to establish in order to qualify for asylum. We then discuss what role an alien's credibility plays in the asylum process.

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, the alien must be a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is defined as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a

5

well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A); see D-Muhumed, 388 F.3d at 818; Al Najjar, 257 F.3d at 1284. "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed, 388 F.3d at 818.

"To establish asylum eligibility, the alien must establish a well-founded fear that his or her political opinion (or other statutorily listed factor) will cause harm or suffering that rises to the level of persecution." Id. (internal quotation marks and citations omitted). In order to demonstrate a sufficient connection between future persecution and the protected activity, an alien is required "to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account" of such a protected activity. Id. (internal quotation marks and citations omitted). Establishing a history of past persecution creates a presumption that an alien has a well-founded fear of future persecution, although that presumption can be rebutted by the government. Id.

The asylum applicant must establish eligibility for asylum by offering "credible, direct, and specific evidence in the record." See Sangha v. INS, 103 F.3d 1482, 1487 (9th Cir. 1997) (internal quotation marks and citation omitted). The testimony of an applicant, if found to be credible, is alone sufficient to

6

establish these factors.  D-Muhumed, 388 F.3d at 818-19.  See 8 C.F.R. § 208.13(a) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."); 8 C.F.R. § 208.16(b) (same).

Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application.  D-Muhumed, 388 F.3d at 819 (citing Singh-Kaur v. INS, 183 F.3d 1147, 1149-53 (9th Cir. 1999)); see Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc) ("An alien's credibility, by itself, may satisfy his burden, or doom his claim."); Sidhu v. INS, 220 F.3d 1085, 1090 (9th Cir. 2000) ("Th[e] language [in 8 C.F.R. § 208.13] plainly indicates that if the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal to his asylum application.").

Of course, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant.  That is, the IJ must still consider all evidence introduced by the applicant.  If the applicant produces no evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an asylum application.  If, however, the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to

7

rely solely on an adverse credibility determination in those instances. Further, the IJ must offer specific, cogent reasons for an adverse credibility finding. See D-Muhumed, 388 F.3d at 819. Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by "specific, cogent reasons" or was not based on substantial evidence. See id. ("The IJ provided cogent reasons for his credibility determination and those reasons are supported by substantial evidence in the record much like any factual determination." (internal quotation marks and citations omitted)); Dailide v. United States Att'y Gen., 387 F.3d 1335, 1341 (11th Cir. 2004). A credibility determination, like any fact finding, "'may not be overturned unless the record compels it.'" D-Muhumed, 388 F.3d at 819 (quoting Lopez De Jesus v. INS, 312 F.3d 155, 161 (5th Cir. 2002)).

Considering these factors, in this case we conclude that substantial evidence supports the IJ's conclusion that Forgue was not credible when he claimed that he had suffered persecution in Haiti due to his political activities and that the IJ gave specific, cogent reasons for his credibility determination. Among other things, the IJ noted that prior to the hearing Forgue never mentioned that: (1) he had been an election monitor in the May 2000 election; (2) he had prevented *Fanmi Lavalas* members from committing election fraud; (3) he had been attacked with acid; or

8

(4) his son had been severely beaten by members of the *Fanmi Lavalas*.[3]  In light of these omissions, substantial evidence supports the IJ's adverse credibility determination.  Because Forgue did not produce corroborating evidence for the IJ to consider and the IJ found his testimony was not credible, substantial evidence also supports the IJ's denial of Forgue's asylum application.[4]

PETITION DENIED.

---

[3]The asylum application specifically asked whether Forgue had been involved in any political activities and if any members of his family had been mistreated by authorities in his home country.

[4]Because Forgue has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT.  Al Najjar, 257 F.3d at 1292-93.