[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 5, 2007
THOMAS K. KAHN
CLERK

No. 07-10982
Non-Argument Calendar
_____

BIA No. A76-533-925

VIVIAN HERNANDEZ-CABALLERO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(October 5, 2007)**

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Vivian Hernandez-Caballero, a native and citizen of Cuba, petitions for review of an order by the Board of Immigration Appeals ("BIA") dismissing her appeal of the immigration judge's ("IJ") order denying her an adjustment of status. After review, we deny the petition.

## I. BACKGROUND

In August 1997, the Immigration and Naturalization Service served Hernandez-Caballero with a Notice to Appear ("NTA"), alleging that she was an arriving alien who did not possess or present a valid entry document, in violation of 8 U.S.C. § 1227(a)(1)(A). In an interview with an immigration official, Hernandez-Caballero stated that she was an active member of the Youth Communist Party in Cuba and had been selected to join the organization while serving in the Cuban military in Angola.

In February 1998, after several continuances for her to hire an attorney, Hernandez-Caballero appeared pro se before an IJ, conceded removability, and was ordered removed.

In November 1998, Hernandez-Caballero filed an I-485 application to adjust status under the Cuban Refugee Adjustment Act ("CRAA"), Pub. L. No. 89-732, 80 Stat. 1161 (1966), stating she was a citizen of Cuba who had been physically present in the United States for at least one year. In November 2003, Hernandez-

Caballero filed an application to adjust status under the CRAA, which the IJ found was a continuation of her 1998 application.

In her 2003 adjustment application, Hernandez-Caballero responded affirmatively to a question asking if she had "ever been a member of, or in any way affiliated with, the Communist Party . . . ." In an addendum to the 2003 application, Hernandez-Caballero explained that in Cuba she enrolled as a member of the Communist Youth Union ("UJC") and was an active member from 1985 to 1991 in order to "keep [her] aspirations alive" and to "attend the University of Havana." Hernandez-Caballero clarified that every member of the Communist Party was selected or recommended from the UJC. However, she was never recommended and thus never became a member of the Communist Party. In 1991, she got married, moved from Cuba to Chile, and abandoned the UJC.

In July 2004, Hernandez-Caballero, through counsel, filed a motion with the Department of Homeland Security to reopen her removal proceedings to request relief from removal and to adjust her status to a permanent resident. An IJ granted the motion to reopen, which effectively allowed her request for adjustment of status to be considered.

In February 2005, Hernandez-Caballero appeared before an IJ with counsel, admitted the factual allegations contained in the NTA, and stated that she was seeking an adjustment of status.

3

In June 2005, Hernandez-Caballero appeared again before an IJ for an adjustment hearing. Hernandez-Caballero admitted that she served as a Sergeant in the Cuban military from 1985 to 1991 and was stationed in Angola for ten months in 1989 and 1990. She also admitted that military service for women in Cuba was voluntary. Hernandez-Caballero stated that she joined the Cuban military because she "didn't want to continue to live in the house with [her] mother and [her] stepfather. . . ."

Hernandez-Caballero testified that she was a member of the UJC from 1987 to 1991, but admitted that she told an immigration official during an interview in August 1997 that she had been selected as a member of the UJC while serving with the Cuban military in Angola. She professed, however, that the UJC was not the same as the Communist Party.

Hernandez-Caballero further testified that she married a Cuban man, then moved from Cuba to Chile and lived in Chile from 1992 to 1997. She admitted that her Cuban husband was a member of the Cuban Communist Party and worked as a Vice Consul for the Cuban Consulate in Chile. While living in Chile, she carried a diplomatic passport and worked at the Cuban Consulate as a receptionist. Although she admitted that she had worked for the Cuban Consulate and that her husband was a member of the Communist Party, she maintained that she was never

a member of the Communist Party. Hernandez-Caballero, however, did not dispute that the Cuban Communist Party controls the government of Cuba.

When questioned regarding when her membership in the UJC ended, Hernandez-Caballero first testified that she left the UJC in 1991 when she moved to Chile. She acknowledged, however, that she never signed a paper or otherwise officially left the organization. She later testified that her membership in the UJC continued until 1993 when she left her job with the Cuban Consulate in Chile. She maintained that she had no ties with the Cuban government after she left the Cuban Consulate in Chile in 1993.

The IJ denied Hernandez-Caballero's application for adjustment of status and ordered her removed to Cuba, or, in the alternative, Chile. In an oral decision, the IJ found that Hernandez-Caballero's testimony regarding her period of membership in the UJC was "vague, internally inconsistent" and "not credible." The IJ noted that she first indicated that she became a member of the UJC in 1987, then later testified that she was invited to join the UJC while she was serving with the military in Angola, which, under her previous testimony, was in 1989 and 1990. In addition, Hernandez-Caballero first testified that she was a member of the UJC until 1991, but later admitted that she still was a member of the UJC while working at the Cuban Consulate in Chile in 1993.

Accordingly, the IJ determined that Hernandez-Caballero failed to establish by credible testimony that her membership, affiliation, or connection to the Communist Party had ended five years prior to applying for admission into the United States. The IJ found that Hernandez-Caballero failed to show that she had left the UJC while in Chile and was no longer collaborating with the Cuban government. The IJ also summarized that Hernandez-Caballero's testimony was "not straightforward, disingenuous, and nonresponsive."

In addition, the IJ denied Hernandez-Caballero adjustment of status as a matter of discretion based on her lack of credibility and her voluntary cooperation with the Cuban government.

Hernandez-Caballero filed a timely appeal with the BIA, which the BIA dismissed. The BIA held that Hernandez-Caballero was subject to a rebuttable presumption of inadmissibility under the CRAA based on her membership in the UJC, which was a branch of the Cuban Communist Party, and her affirmative answer in her adjustment of status application to the question of whether she ever was a member of the Communist Party.

The BIA agreed with the IJ's determination that Hernandez-Caballero had not rebutted the presumption of inadmissibility. First, the BIA held that Hernandez-Caballero voluntarily joined the Cuban military, which required membership in the Communist Party. Second, the BIA held that Hernandez-

6

Caballero did not present any evidence to show that her membership in the Communist Party was not meaningful and further concluded that her membership was, in fact, meaningful because it helped her obtain employment in the Cuban Consulate in Chile. Finally, because of Hernandez-Caballero's incredible testimony with regard to the dates of her membership in the UJC, the BIA concluded that she was unable to establish that her Communist Party membership had terminated at least five years before the date of her application for adjustment of status. Because the BIA agreed with the IJ's decision that Hernandez-Caballero was inadmissible, it declined to address the IJ's discretionary denial of adjustment of status.

Hernandez-Caballero timely petitioned for review.

## II. DISCUSSION

On appeal, Hernandez-Caballero argues that the BIA and IJ erred in finding that (1) the UJC (Communist Youth Union) was equivalent to the Cuban Communist Party, (2) her enlistment in the Cuban military was voluntary even though she enlisted to escape her family situation at home, and (3) she continued to be a member of the Communist Party when she returned to Cuba after her service with the Cuban military in Angola.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257

7

F.3d 1262, 1284 (11th Cir. 2001). We review de novo the legal determinations of

the BIA, id., and review factual findings of the BIA under the substantial evidence

test, Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005). "Under

this highly deferential standard of review, the [BIA's] decision can be reversed

only if the evidence 'compels' a reasonable fact finder to find otherwise." Id.

(citations omitted).

We also review credibility determinations under the substantial evidence

test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). The IJ

"must offer specific, cogent reasons for an adverse credibility finding." Id. at

1287. "Once an adverse credibility finding is made, the burden is on the applicant

alien to show that the IJ's credibility decision was not supported by 'specific,

cogent reasons' or was not based on substantial evidence." Id.

The CRAA provides that:

> the status of any alien who is a native or citizen of Cuba and who has
> been inspected and admitted or paroled into the United States
> subsequent to January 1, 1959 and has been physically present in the
> United States for at least one year, may be adjusted by the Attorney
> General, in his discretion and under such regulations as he may
> prescribe, to that of an alien lawfully admitted for permanent
> residence if the alien makes an application for such adjustment, and
> the alien is eligible to receive an immigrant visa and is admissible to
> the United States for permanent residence. . . .

CRAA, Pub. L. No. 89-732, 80 Stat. 1161, § 1 (as amended, see 8 U.S.C. § 1255,

historical and statutory notes) (quoted in Gonzalez v. McNary, 980 F.2d 1418,

1420 n.1 (11th Cir. 1993)).  However, any alien "who is or has been a member of or affiliated with" the Communist Party or any "subdivision or affiliate thereof" is inadmissible to the United States.  8 U.S.C. § 1182(a)(3)(D)(i).  There are specific exceptions to 8 U.S.C. § 1182(a)(3)(D)(i) for aliens whose membership in the Communist Party (1) was involuntary, 8 U.S.C. § 1182(a)(3)(D)(ii), or (2) terminated at least five years[1] prior to the date on which she applied for admission or adjustment of status, 8 U.S.C. § 1182(a)(3)(D)(iii).  The BIA has further established an exception to 8 U.S.C. § 1182(a)(3)(D)(i) where the alien shows that her membership in the Communist Party was not "meaningful."  See Matter of Rusin, 20 I&N Dec. 128, 130-32 (BIA 1989).

As an initial matter, Hernandez-Caballero dedicates the vast majority of her brief to arguing that the IJ erred in its discretionary decision to deny her adjustment of status.  However, the BIA declined to address the IJ's discretionary decision to deny Hernandez-Caballero adjustment of status because it agreed with the IJ's determination that she was inadmissible under 8 U.S.C. § 1182(a)(3)(D)(i).

---

[1]This exception states that 8 U.S.C. § 1182(a)(3)(D)(i) shall not apply to an alien who establishes that her membership or affiliation with the Communist Party terminated at least:
    (a) 2 years before the date of such application, or
    (b) 5 years before the date of such application, in the case of an alien whose membership or affiliation was with the party controlling the government of a foreign state that is a totalitarian dictatorship as of such date . . .
8 U.S.C. § 1182(a)(3)(D)(iii)(I)(a), (b).  Because Hernandez-Caballero does not dispute that the Cuban Communist Party controls the government of Cuba, we will apply subsection (b) here.

Because we are reviewing only the BIA's decision here, and the BIA declined to address the IJ's discretionary decision, we will not review the discretionary relief issue.[2]

With respect to the decision that Hernandez-Caballero was inadmissible under 8 U.S.C. § 1182(a)(3)(D)(i), we conclude that the BIA's decision is supported by substantial evidence. First, we need not address here whether the UJC (Communist Youth Union) is a branch of the Communist Party because the record evidence that Hernandez-Caballero was a member of the UJC, enlisted in the Cuban military and worked at the Cuban Consulate in Chile provides substantial evidence for the BIA's finding that Hernandez-Caballero was at least "affiliated with" the Cuban Communist Party or a "subdivision or affiliate" of the Cuban Communist Party. Indeed, Hernandez-Caballero admitted that every member of the Communist Party is recommended or selected from the UJC (Communist Youth Union), which further demonstrates the affiliation. Thus, the record does not compel reversal of the BIA's finding that Hernandez-Caballero

---

[2]To the extent that Hernandez-Caballero argues that the IJ erred in failing to consider the application of 8 U.S.C. § 1182(a)(3)(D)(iv), which allows the Attorney General to waive the application of 8 U.S.C. § 1182(a)(3)(D)(i) in the interest of family unity where an alien has a close family member who is a citizen or permanent resident of the United States, we decline to address this argument because the IJ's discretionary decision is not before us on review. In any event, we would lack jurisdiction to review this discretionary decision. See 8 U.S.C. § 1252(a)(2)(B).

was inadmissible because she was "a member of or affiliated with" the Cuban Communist Party under 8 U.S.C. § 1182(a)(3)(D)(i).

Second, as to the BIA's determination that Hernandez-Caballero's failed to show that her relationship with the Cuban Communist Party was "involuntary" under 8 U.S.C. § 1182(a)(3)(D)(ii), Hernandez-Caballero's testimony that she enlisted in the Cuban military because she "didn't want to continue to live in the house with [her] mother and [her] stepfather" is wholly insufficient to compel the conclusion that her enlistment in the military was involuntary. Furthermore, she does not argue that her other affiliations with the Communist Party – her membership in the UJC and her employment at the Cuban Consulate in Chile – were, in any way, involuntary. Thus, the BIA's conclusion that Hernandez-Caballero failed to establish under 8 U.S.C. § 1182(a)(3)(D)(ii) that her membership or affiliation with the Communist Party was involuntary is supported by substantial evidence.

Finally, with respect to the BIA's finding that Hernandez-Caballero failed to show that her membership in or affiliation with the Communist Party ended five years before she filed her adjustment of status application under 8 U.S.C. § 1182(a)(3)(D)(iii), the BIA's and IJ's findings that Hernandez-Caballero's testimony regarding her membership in the UJC was not credible is supported by

11

substantial evidence.[3]  Hernandez-Caballero provided inconsistent information regarding when she joined the UJC.  She stated in her 2003 adjustment of status application that she joined the UJC in 1985.  She then testified before the IJ that she joined the UJC in 1987, but later admitted that she told an immigration official during an interview in 1997 that she had been invited to join the UJC during her service with the Cuban military in Angola, which she had testified was from 1989 to 1990.

More importantly, Hernandez-Caballero provided inconsistent information regarding when, if ever, she left the UJC.  Hernandez-Caballero initially testified that she was a member of the UJC until 1991.  She later testified that her membership in the UJC continued until 1993 when she left her job with the Cuban Consulate.  Thus, based on Hernandez-Caballero's inconsistent testimony regarding the key issue of the dates of her membership in the UJC, we hold that the IJ's adverse credibility finding, which was affirmed by the BIA, is supported by substantial evidence.  Indeed, the IJ stated the court was not convinced that Hernandez-Caballero had left the UJC organization.  Furthermore, the BIA's finding that Hernandez-Caballero failed to show under 8 U.S.C.

---

[3]Hernandez-Caballero filed an application for adjustment of status in 1998, and then filed another application in 2003.  The IJ found that the 2003 application was the same continuing application as the 1998 application.  Thus, 1998 was the relevant date for purposes of the five-year exception in 8 U.S.C. § 1182(a)(3)(D)(iii).  Hernandez-Caballero has not challenged this finding in her present appeal.

§ 1182(a)(3)(D)(iii) that her membership in or affiliation with the Cuban Communist Party, or any subdivision or affiliate thereof, ended five years before the date she filed her adjustment of status application is supported by substantial evidence.[4]

**PETITION DENIED.**

---

[4]Hernandez-Caballero also cites cases from this Court discussing how an alien may show a due process violation in immigration proceedings. However, she fails to explain how there was a due process violation in her case. Accordingly, we hold that any due process claim is waived because Hernandez-Caballero failed to develop it in her brief. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that an issue listed in the statement of facts but not elaborated upon in the initial or reply briefs was abandoned).