[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12845
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2010
JOHN LEY
CLERK

Agency No. A098-548-747

HUMBERTO ALVAREZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 5, 2010)

Before CARNES, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Humberto Alvarez, a native of Colombia and a citizen of Venezuela, through

counsel, seeks review of the Board of Immigration Appeals' ("BIA") decision, affirming the Immigration Judge's ("IJ") order denying his application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"). INA §§ 208, 241, 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). In his petition for asylum, Alvarez claimed that he was persecuted in Venezuela by the Bolivarian Circles and other authorities that support the government of Hugo Chavez. Alvarez testified before the IJ that members of the Bolivarian Circles threatened him, beat him, and/or ransacked his home on multiple occasions in 2002 and 2003 due to his participation in various protest marches organized by the Action workers of Venezuela. The IJ and the BIA both concluded that Alvarez failed to present a credible claim of asylum.

On appeal, Alvarez argues that the IJ and BIA failed to provide sufficient reasons for their adverse credibility determinations because the identified inconsistencies in his testimony were either insignificant or were not actually inconsistent. Alvarez argues that the record compels reversal. We disagree.

In order to establish eligibility for asylum, an applicant must provide "credible, direct, and specific evidence in the record" showing that he is a "refugee." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005)

(quotation omitted). *See also* 8 U.S.C. § 1158(b)(1). An alien qualifies as a refugee if he can establish he has suffered past persecution or has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A).

If an alien's testimony that he fears persecution is credible, it may be sufficient without corroboration to satisfy his burden of proof required to establish asylum eligibility. *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009). Likewise, a denial of asylum relief can be supported solely by an adverse credibility determination, which may be made on the basis of internal inconsistencies in an applicant's testimony. *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1348 (11th Cir. 2008) (citing 8 U.S.C. § 1158(b)(1)(B)(iii)). If the court explicitly determines that the alien lacks credibility, it must offer "specific, cogent reasons" for the finding. *Kueviakoe*, 567 F.3d at 1305. The burden then shifts to the alien to show why the credibility determination was not supported by "specific, cogent reasons" or was not based on substantial evidence. *Id.*

Factual determinations, including credibility determinations, are reviewed under a substantial evidence standard, which provides that the decision "can be reversed only if evidence 'compels' a reasonable fact finder to find otherwise." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005) (per curiam).

Therefore, we must affirm the BIA's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the record evidence "in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

Where, as here, the BIA issues its own opinion, we review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision and reasoning. *Al Najjar*, 257 F.3d at 1284. Therefore, because the BIA expressly adopted the conclusions and reasoning with respect to three inconsistencies in Alvarez's testimony, we look to both the BIA's and the IJ's opinions with respect to those perceived inconsistencies.

The BIA found that Alvarez failed to present a credible claim for asylum because his testimony was insufficiently detailed, contained internal and external inconsistencies, and lacked sufficient corroboration. The BIA endorsed three of the IJ's identified inconsistencies in making its adverse credibility determination. First, the BIA recognized an internal inconsistency in Alvarez's testimony before the IJ. Alvarez testified that on June 15, 2002, his home was invaded by members of the Bolivarian Circles and National Guard; he was beaten unconscious and awakened in a pool of blood; and he "remained in [his] apartment for two days in

4

fear" before seeking medical attention. The BIA found that Alvarez contradicted this statement when he also testified that the day after the alleged beating, he left his apartment to report the incident at the police station. Second, while Alvarez testified that he changed his residence in Caracas only once to avoid further persecution, his wife testified that she and Alvarez were constantly moving from place to place during the period after the June 2002 beating. Third, Alvarez testified that when he returned to Venezuela for a short visit after first entering the United States due to persecution, nothing personally happened to him aside from threats because he would not leave his apartment for fear of future beatings. His wife, on the other hand, testified that he was "found" by the Bolivarian Circles three days after his return, and his persecutors monitored his apartment throughout his stay, which prompted his second entry to the United States.

Although we agree with Alvarez that the IJ and BIA overstated the inconsistency between his and his wife's testimony regarding the events following his return to Venezuela,[1] the other two inconsistencies constitute "specific, cogent reasons" for the BIA's adverse credibility determination and are material to his

---

[1] The BIA endorsed the IJ's finding that Alvarez's testimony that he had no problems with the Bolivarian Circles upon his return, which he qualified as being due to his decision to remain in hiding in his apartment, was inconsistent with his wife's testimony that his persecutors monitored the foyer of his apartment building. However, Alvarez also testified that there were threats made against him by members of the Bolivarian Circles. The IJ and BIA appear to have ignored this testimony, which lessens the perceived inconsistency between Alvarez's and his wife's testimony.

asylum claim.[2] First, the fact that Alvarez testified that he only moved once within Caracas to avoid persecution is in direct conflict with his wife's testimony that they moved constantly during the relevant time period. This inconsistency is material to Alvarez's claim in that it suggests a lack of credibility as to what steps he took to avoid further harm or harassment, which is relevant to whether Alvarez has an objective fear of future harm in Venezuela. Second, the internal inconsistency in Alvarez's testimony that he was too afraid and too weak due to blood loss to leave his apartment for two days after the June 15, 2002 beating but at the same time left his apartment to file a police report is also material to his asylum claim because it bears directly on the truth and seriousness of the events that Alvarez claims constituted past persecution. In light of these two inconsistencies, as well as the lack of corroborating evidence of Alvarez's persecution, in the form of police reports or medical records, we cannot conclude that the evidence "compels" reversal. *See Sepulveda*, 401 F.3d at 1230.

In sum, substantial evidence supports the BIA's adverse credibility

---

[2] The REAL ID Act, which governs all asylum applications filed after May 11, 2005, now provides that an adverse credibility determination may be based on any inconsistency, regardless of whether the inconsistency is material, i.e., whether or not it goes to the heart of the asylum claim. *See* REAL ID Act § 101(a)(3)(B)(iii), Pub. L. No. 109-13, 119 Stat. 231 (2005), codified at 8 U.S.C. § 1158(b)(1)(B)(iii). Alvarez's asylum application was filed in 2004 and is therefore not governed by the REAL ID Act. Our circuit has not determined whether credibility determinations, in cases not governed by the REAL ID Act, must be supported by inconsistencies that go to the heart of the claim.

determination and resulting denial of Alvarez's application for asylum.[3]  Therefore,

we deny his petition for review.[4]

**PETITION DENIED**.

---

[3]     We decline to reach Alvarez's additional argument that the IJ committed reversible error by finding that he could relocate to Colombia.  The BIA expressly stated that it was not considering the challenge to the IJ's grant of the motion to pretermit Alvarez's asylum application based on a safe third country for removal.  Instead, it chose to affirm the denial of asylum on burden of proof grounds.

[4]     Because Alvarez failed to establish eligibility for asylum, we also deny his applications for withholding of removal and CAT relief.  "To qualify for withholding of removal or CAT relief, an alien must establish standards more stringent that those for asylum eligibility; thus, an alien unable to prove a well-founded fear of persecution based on a protected ground, as required for asylum relief, necessarily fails to demonstrate a clear probability of persecution, the standard applicable to a claim for withholding of removal." *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007) (internal citation omitted).