[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2010
JOHN LEY
CLERK

No. 09-14287
Non-Argument Calendar
_____

Agency No. A098-255-820

NAN LING GUO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 25, 2010)

Before TJOFLAT, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Nan Ling Guo is a native and citizen of China. He arrived in the United States on July 2, 2005, without a valid entry document. A Notice to Appear issued on July 16, 2005, charging him with removability. He conceded removability and, through counsel, applied for asylum, withholding of removal under the Immigration and Nationality Act ("INA), and protection under the Convention Against Torture ("CAT"). In his application, Guo stated that his mother and cousin had been arrested by the Chinese government and sentenced to prison because they were Christian and wanted to have Bibles printed. He feared that if returned to China, he would be jailed for essentially the same reasons they were.

An Immigration Judge ("IJ") held a hearing on Guo's three-fold application on June 10, 2006. Guo testified at the hearing, and this is the gist of what he had to say in support of his claim for asylum, withholding of removal and Cat relief.

He is a Christian, having been baptized (in China) in 2002. He became a Christian because "his mother took him" to church. She was very active in the church; he was less so, attending church gatherings intermittently. The church needed Bibles, and his mother asked him to arrange for their printing at his uncle's printing plant, where Guo worked as the daily business manager. Guo did make the necessary arrangements, but was not involved in the actual printing. Instead, he asked his cousin, who worked at the plant, to handle the printing.

2

After 200 Bibles had been printed, the police came to the plant in mid-day, seized the Bibles, and arrested his mother and cousin. (At the time, Guo and his uncle were attending a business meeting several hundred miles away.) The plant foreman, who was in the plant's office at the time of the arrest, telephoned Guo to tell him what had happened and about the arrests. He told Guo that he was not arrested, apparently because, according to him, he knew nothing about the Bible printing. Guo then called "Sister Chen" at his church. She confirmed that his mother and sister had been arrested; they had also been jailed, purportedly under ten-years' sentences. She told Guo that the police were looking for him. So, to avoid arrest, he and his uncle, went into hiding. Guo stayed at a cousin's house in Linjaiang for one and a half months, then went to Hong Kong. There, a snakehead arranged for his travel to the United States.

At the conclusion of the hearing, the IJ found Guo's testimony internally inconsistent, inconsistent with supporting documents (including his asylum application), and implausible. Examples of this were: Guo testified that his mother asked him to be involved in printing the Bibles, but documents in the record (accompanying a letter from Guo's aunt) suggested that his mother asked Guo's uncle, not Guo, to print the Bibles. In his asylum application, Guo said that both parents were Christian. He testified, however, that only his mother was a

3

Christian; his father was not. Guo's testimony that the police were seeking to arrest Guo was implausible. The plant foreman was Guo's cousin's supervisor and was present in the plant while the printing was taking place. Yet the police did not arrest him. Guo was hundreds of miles away at the time, attending a business meeting. Why would the police, who found no cause to arrest the foreman, want to arrest Guo? Guo could not explain this. As the IJ observed, "[i]f anyone would be charged with responsibility it would appear that the supervisor would be so charged."

In sum, the IJ found that"[i]n this case, [Guo's] lack of credibility concerns critical and material aspects of his claim." There "is concern as to whether [Guo] was involved in his religion as he claims," that "[h]e has not testified credibly concerning his own parents' involvement in the Christian church," and "as to whether [Guo] himself was involved with th[e] printing process and whether he could reasonably be expected to be charged with being involved in printing unregistered Bibles." The IJ thus concluded that Guo had not meet his burden of proof, denied his application in full, and ordered his removal.

On July 2, 2008, Guo appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal, sustaining under the clear error standard the IJ's credibility finding because of the inconsistencies in Guo's

4

testimony—which the BIA illustrated—and the implausibility of his story.

Guo now seeks review of the BIA's decision, contending that the BIA erred in affirming the IJ's adverse credibility determination because (1) he was not provided an opportunity to explain the alleged inconsistencies in his testimony and his asylum application, and (2) the IJ's adverse credibility determination was based on speculation and was unsupported by cogent or specific reasons.[1] Additionally, Guo proffers various explanations to show that his testimony was not implausible. Guo contends that, because the BIA's affirmance of the IJ's adverse credibility determination was in error, he met his burden of proof to establish eligibility for asylum and withholding of removal on account of his Christian beliefs.

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007). Here, the BIA did not expressly adopt the IJ's decision; rather, it issued its own opinion upholding the IJ's adverse credibility determination. We therefore review only the BIA's decision.

The BIA's factual determinations, including credibility determinations, are

---

[1] Guo's brief to this court does not challenge the BIA's denial of CAT relief. We therefore deem the issue of CAT relief abandoned. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

5

reviewed under the highly deferential substantial evidence test, which requires us to view "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotation omitted). We will not engage in a *de novo* review of the BIA's factual findings. *Adefemi*, 386 F.3d at 1027. In sum, findings of fact made by the BIA "may be reversed by this Court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.*

The BIA must offer specific and cogent reasons for an adverse credibility finding. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). The applicant has the burden to show that the BIA's "credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Id.* (internal quotation omitted). "A credibility determination, like any fact finding, may not be overturned unless the record compels it." *Id.* (internal quotation omitted). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of

6

embellishments." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006).

Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act § 101(a)(3), a credibility determination may be based on "any inaccuracies or falsehoods in [the applicant's] statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (emphasis omitted). Generally, tenable explanations for implausibilities in an applicant's testimony will not compel a reasonable fact finder to reverse a credibility determination, especially if corroborating evidence is absent. *Id.*; see INA § 208(b)(1)(B)(ii); 8 U.S.C. § 1158(b)(1)(B)(ii) (providing that, if the trier of fact determines that an asylum applicant is not credible, the trier of fact can determine that the applicant should provide corroborating evidence); INA § 241(b)(3)(C); 8 U.S.C. § 1231(b)(3)(C) (providing the same for withholding of removal claims).

The Attorney General or Secretary of Homeland Security has discretion to grant asylum if the alien meets the definition of "refugee," as defined by 8 U.S.C. § 1101(a)(42)(A). INA § 208(b)(1)(A); 8 U.S.C. § 1158(b)(1)(A). A "refugee" includes any person who is unwilling to return to, and is unable or unwilling to avail herself of the protection of, the country of her nationality where she last

habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving her statutory "refugee" status, thereby establishing asylum eligibility. *Al Najjar*, 257 F.3d at 1284. "To establish asylum [eligibility] based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir.2006). "To establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Id.* (internal quotation and citation omitted). A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *Sepulveda*, 401 F.3d at 1231.

To qualify for withholding of removal under the INA, an alien must show that, if returned to her country, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3); 8 U.S.C. § 1231(b)(3). If a petitioner is unable to meet the standard of proof for asylum, he is generally precluded from

8

qualifying for withholding of removal.  *Al Najjar*, 257 F.3d at 1292-93.

We conclude that substantial evidence supports the BIA's determination that Guo's testimony was not credible due to the inconsistencies and implausibilities in his testimony and the documentary evidence submitted.  The record thus does not compel the reversal of the BIA's conclusion that Guo was not eligible for asylum or withholding of removal because he did not show persecution based on religion.

PETITION DENIED.