[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15780
Non-Argument Calendar
_____

Agency No. A087-661-661

GULIIA TURGUNBEKOVNA TABALDIEVA,

Petitioner,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 1, 2013)

Before TJOFLAT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Petitioner, Gulia Tabaldieva, a citizen of Kyrgyzstan, was admitted to the United States on or about June 1, 2009, on a J-I non-immigrant visa, with permission to remain until September 24, 2009. She remained here without authorization, and on October 7, 2009 filed an application for asylum with the Department of Homeland Security ("DHS").

In her application, Petitioner asserted that she was physically attacked in Kyrgyzstan on three occasions because of her political opinion. The first attack occurred on October 15, 2008. After finishing her classes at university, Petitioner met two classmates, Kristina and Marat, to go to the university library. The library was closed, so Marat arranged to have his brother take them to the State Library. Marat's brother and two men picked them up, but took them to a house, instead of the library. At this point, Marat disappeared, and the three men forced Petitioner and Kristina into the house, where they beat them and Petitioner became unconscious. Both women were in a hospital for two weeks. Petitioner's parents filed a complaint against the attackers, and the court required Marat's brother to pay a fee. Petitioner's parents persuaded her to write an article about the attack

2

for the newspaper. The article was published on February 1, 2009, and criticized local law enforcement for failing to investigate the incident and for being corrupt.

The second attack occurred on February 3, 2009.  Two men dressed like police officers came to Petitioner's home and took her to another location, where they questioned her about the article, convinced her that the police were not corrupt as she claimed, and told her not to write any more articles.  They caused her "a lot of harm," so she went to a hospital and did not return to university for four weeks.

The third attack occurred on March 7, 2009.  At 7:00 p.m., as she was going home, a car approached her.  The men in the car, one being Marat's brother, seized her, took her to an unknown house where girls were screaming, and said they "were going to take advantage of her.  A man struck her and she lost consciousness.  She awakened in a hospital.  Her parents filed another complaint against Marat's brother, with no result.

Following an interview on her application, the DHS asylum officer declined to grant asylum, referred her application to an Immigration Judge ("IJ"), and commenced removal proceedings.  Petitioner conceded removability, renewed her application for asylum, and applied for withholding of removal.

3

On August 16, 2011, the IJ held a merits hearing.  After hearing Petitioner's testimony and considering the other evidence submitted, the IJ denied her applications for asylum and withholding of removal— concluding that her testimony was not credible, that she failed to provide reasonably available corroborating evidence, and that she had not met her burden for relief—and ordered her removal to Kyrgyzstan.  On October 11, 2012, the Board of Immigration ("BIA") affirmed the IJ's decision based on her lack of credibility and failure to sufficiently corroborate her claim of persecution.

Petitioner now petitions this court to review the BIA's decision, affirming the IJ's denial of her application for asylum under the Immigration and Nationality Act ("INA") § 208,  8 U.S.C. § 1158(a),  and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).[1]   In her petition for review, she argues that the BIA erred in affirming the IJ's adverse credibility determination, because the ruling was not supported by substantial evidence.  She also argues that the BIA erred in affirming the IJ's alternative ruling that she was required to and failed to corroborate her testimony with specific evidence.

As an initial matter, our review is limited to the decision of the BIA. Therefore, we only address the adverse credibility determination and the necessity

---

[1] Tabaldieva included Otabek Kamilov, a citizen of Uzbekistan, as a derivative spouse on her application.  However, the couple divorced on July 2, 2012, and Kamilov is not a party to the petition for review.

4

of corroborating evidence.  *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1232 n.4 (11th Cir. 2006) (refusing to address the merits of a claim because the IJ's decision was based on an adverse credibility determination).  n.1 (11th Cir. 2011).

                                          I.

Petitioner argues that the adverse credibility determination was not supported by substantial evidence.  She testified that she was raped during the attacks giving rise to her application, and attempts to explain the inconsistency between this testimony and the medical records of her hospital visits after each attack, which do not indicate that she was diagnosed with or treated for sexual assault.  She argues that it is plausible that she did not report the rapes to the doctors for the reasons given in the U.S. Department of State 2009 Country Report for Kyrgyzstan, which states that rapes were underreported in the country due to psychological pressure, cultural traditions, and apathy of law enforcement.  She also asserts that the inconsistencies in her testimony were too minor to support an adverse credibility determination.

We review only the opinion of the BIA, except to the extent that the BIA expressly adopted the IJ's decision.  *Chen*, 463 F.3d at 1230.  We review credibility determinations under the substantial evidence test, reversing "only if the

5

evidence compels a reasonable fact finder to find otherwise." *Id*. at 1230-31

(quotation omitted).

An applicant for asylum must meet the INA's definition of a refugee. INA

§ 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . .
> and who is unable or unwilling to return to, and is unable or unwilling
> to avail himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

An applicant for asylum must provide specific and credible evidence

demonstrating past persecution or a well-founded fear of future persecution based

on a statutorily listed factor. *Chen*, 463 F.3d at 1231. An applicant seeking

withholding of removal must show that her "life or freedom would be threatened

. . . because of [her] race, religion, nationality, membership in a particular social

group, or political opinion" if she returned to the country in question. INA

§ 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). An applicant must demonstrate that it is

"more-likely-than-not" that she would be persecuted upon returning to her country.

*Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1277 (11th Cir. 2009).

Under the REAL ID Act of 2005,[2] credibility determinations are based on the totality of the circumstances, which may include inconsistencies that do not go to the "heart of the applicant's claim." INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). Such rulings must be supported by the record rather than "personal perceptions" or speculation and conjecture. *Tang*, 578 F.3d at 1278. The BIA may base its determination on "the demeanor, candor, or responsiveness of the applicant," the plausibility of the applicant's account, the consistency between the applicant's statements "considering the circumstances under which the statements were made," the internal consistency of the applicant's statements, and "the consistency of such statements with other evidence of record." INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).

An adverse credibility determination alone may be sufficient to support the denial of asylum, especially if the applicant's testimony was not supported by corroborating evidence. *Chen*, 463 F.3d at 1231. However, even if the applicant is found to be incredible, the BIA must consider all of the evidence presented by the applicant. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). The BIA must offer specific, cogent reasons for its ruling. *Id*. To challenge an adverse credibility determination, a petitioner to this Court must show that it was not

---

[2]  The Real ID Act applies to applications, such as Tabaldieva's, that were filed after May 11, 2005. *See Chen*, 463 F.3d at 1231.

7

supported by "specific, cogent reasons" or was not based on substantial evidence. *Id*. The fact that the petitioner provides "tenable" explanations for the doubtful portions of her testimony does not compel reversal, particularly in the absence of corroborating evidence. *Chen*, 463 F.3d at 1233.

The BIA relied on the IJ's specific, cogent reasons for the adverse credibility determination. *See Forgue*, 401 F.3d at 1287. Moreover, the evidence on the record would not compel a reasonable fact finder to reverse the BIA's ruling. *See Chen*, 463 F.3d at 1230-31. Petitioner's testimony regarding the newspaper article that she allegedly wrote criticizing law enforcement was vague, inconsistent, and implausible. She could not recall whether she ever saw a copy of the article or even read it, whether her name appeared as its author, whether her name appeared in the article, or whether her family had a copy of the article. Her testimony that she was raped during the attacks was internally inconsistent, and inconsistent with her prior statements to an asylum officer and her medical records. Finally, she provided details of the attacks in a June 20, 2011 affidavit and during the August 16, 2011 merits hearing, but was unable to recall any details of the attacks when she was interviewed by a social worker during that same time period.

On this record, substantial evidence supported the BIA's conclusion that her testimony was not credible. Petitioner argues that the inconsistencies in her

8

testimony were too minor to support the BIA's ruling. Her argument is without merit, because an adverse credibility determination may be based on inconsistencies that do not go "to the heart of the applicant's claim." *See* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).

In light of the adverse credibility determination, Petitioner did not sufficiently corroborate her claim that she was persecuted on account of her political opinion so as to meet the burden for asylum and withholding of removal. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *Chen*, 463 F.3d at 1231. Besides her own testimony, her father's written statement was the only other evidence mentioning the newspaper article that allegedly motivated a retaliatory attack against her for her political opinion about police corruption. She also relied on her father's statement that she was attacked because her father sued the Kyrgyzstani government for reinstatement of his job. However, she provided no evidence to corroborate her father's statement, and it is unclear how his suit related to her political opinion.

Because of the lack of evidence corroborating the essential elements of her claims for relief, the BIA's adverse credibility determination was sufficient to support the denial of asylum. *See Chen*, 463 F.3d at 1231. Because Petitioner did not sustain her burden as to asylum, she also did not meet the higher burden

9

required for withholding of removal.  *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *Tang*, 578 F.3d at 1277.

## II

Petitioner argues that the BIA erred in affirming the IJ's alternative ruling that, assuming her testimony was credible, she was required to corroborate it by submitting a copy of the newspaper article that she wrote on police corruption. She asserts that she was not required to corroborate her testimony, and the burden of proof was less than a preponderance of the evidence.

"Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."  INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii).  We only reverse a determination regarding corroborating evidence under INA § 208(b)(1)(B), if "a reasonable trier of fact [would be] compelled to conclude that such corroborating evidence [was] unavailable."  INA § 242(b)(4)(D), 8 U.S.C. § 1252(b)(4)(D).

Petitioner's testimony was the only evidence presented as to the availability of the newspaper article.  She testified that she did not have a copy of the article because police visited and searched her home in Kyrgyzstan, leaving it in a mess.

10

However, she later testified that she did not know if she had ever had a copy of the article. She said that her parents contacted the editors of the newspaper to obtain a copy, but she did not know where the newspaper office was located or whether it was still in operation. Her brother's wife tried to contact a person who worked for the newspaper and had helped publish the article, but the person had left the country. Petitioner's testimony alone would not compel a reasonable fact finder to conclude that the article was unavailable. *See* INA § 242(b)(4)(D), 8 U.S.C. § 1252(b)(4)(D).

Upon review of the record and consideration of the parties' briefs, we deny the petition for review.

**PETITION DENIED.**