[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10316
Non-Argument Calendar
_____

Agency No. A087-927-876

PEDRO RAFAEL PEREIRA OLIVARES,
MARIA ESTHER QUIROGA GONZALEZ,
ALEJANDRO JOSE PEREIRA QUIROGA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 22, 2013)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Pedro Rafael Pereira Olivares, Maria Esther Quiroga Gonzalez, and Alejandro Jose Pereira Quiroga, (collectively Petitioners), natives and citizens of Venezuela, petition for review of the Board of Immigration Appeals' (BIA) dismissal of their appeal from the Immigration Judge's (IJ) denial of Olivares' application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).[1]  The IJ determined Olivares was not credible. The BIA found no clear error in the IJ's adverse credibility determination and concluded without credible testimony, Olivares could not satisfy the burden of proof applicable to asylum or withholding of removal.[2]  In his petition, Olivares argues (1) the BIA and IJ erred by failing to consider his corroborating evidence, and (2) the adverse credibility determination was not supported by specific, cogent reasons.  After careful review, we grant Olivares' petition.

## I.  Standard of Review

We review the BIA's decision as the final judgment, except to the extent that the BIA expressly adopted the IJ's decision.  *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).  We will affirm the BIA's decision "if it is supported by

---

[1] Petitioners' claims are based on the asylum application of Olivares, the lead petitioner.

[2] Olivares failed to argue in his initial brief that the IJ or BIA erred in denying his claim for CAT relief.  Accordingly, he has abandoned any claims regarding CAT relief.  *See Imelda v. U.S. Att'y Gen.*, 611 F.3d 724, 727 (11th Cir. 2010) (holding the petitioner abandoned her CAT claim when she failed to raise it in her initial appellate brief).

reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). The BIA's factual findings are reviewed "under the highly deferential substantial evidence test," where we view the evidence in the light most favorable to the BIA's decision and draw all reasonable inferences in favor of that decision. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004). Credibility determinations, like any other fact finding, can only be overturned if the record compels it. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).

## II.  Discussion

The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who is determined to be a "refugee." 8 U.S.C. § 1158(b)(1)(A). The applicant bears the burden of establishing that he is statutorily eligible for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). To satisfy this burden, an alien must establish he is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). To qualify for withholding of removal, an alien must demonstrate that, if removed to his country, his "life or freedom would be threatened" on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3).

An adverse credibility determination, standing alone, may be sufficient to deny an asylum application where the applicant produces no corroborating evidence. *Forgue*, 401 F.3d at 1287. However, if an applicant produces evidence, the IJ must consider that evidence, and cannot rely solely on the adverse credibility determination. *Id.* After an adverse credibility determination is made, the burden shifts to the applicant to show that the IJ's decision "was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Id.*

Under the REAL ID Act of 2005, credibility determinations are based upon the totality of the circumstances:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

As an initial matter, the BIA rested the denial of Olivares' application for asylum and withholding of removal on the adverse credibility determination. Olivares presented medical reports, photographs, and other documentary evidence

that supported his testimony, yet the BIA failed to consider this corroborating evidence.[3]  Because "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant," *see Forgue*, 401 F.3d at 1287, the failure to consider Olivares' corroborating evidence was error.

The BIA concluded the IJ's adverse credibility determination was supported by the following inconsistencies: (1) Olivares never told the asylum officer or stated in his asylum application that the first threats made against him occurred in November 2008; (2) Olivares testified before the IJ and told the asylum officer that he was cut on his back with an unknown object, but his application stated he was cut with a knife; (3) Olivares testified that his troubles became serious in February 2009, but, in his asylum interview, he stated that his problems began in May 2009; and (4) Olivares did not mention the May 2009 smoke bomb during his testimony.

As to the first three perceived inconsistencies, "no reasonable fact-finder could conclude on this record that they were inconsistencies." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1305 (11th Cir. 2009).  First, the record contradicts the BIA's finding that Olivares never told the asylum officer or mentioned in his asylum application that the first threats against him came in November 2008 while

_____

[3]  The Government contends Olivares did not argue to the BIA that the IJ erred by failing to consider all of the evidence presented.  However, in his brief to the BIA, Olivares discussed the evidence presented and argued that the IJ's finding that no members of his family had been injured to the point of requiring medical attention was contradicted by the photographic evidence and medical records he submitted.

serving as a fraud watchdog during the elections.  When the asylum officer asked Olivares when he began having problems, Olivares started to discuss 2006, but the officer interrupted him, stating "Let's talk about more recent events," and specifically asking "[w]hen problems in 2009 beg[a]n."  Thus, the asylum officer expressly diverted Olivares from discussing pre-2009 events.  Moreover, in his asylum application, Olivares stated he had worked in the electoral polls during elections in 2006, 2007, 2008, and 2009, and that "[d]ue to these political activities, I got in trouble with Chavistas from PSUV."

Second, the inconsistency between the use of the word "knife" on Olivares' application, and the interview statement and testimony that he was cut with a sharp object, is immaterial.  In *Kueviakoe*, we concluded that the inconsistency between the use of the word "car" in the petitioner's testimony and the use of the word "truck" in the petitioner's written testimony was inconsequential when the petitioner's words were translated from another language and, more significantly, when all of the other pertinent information about petitioner's story remained the same.  *Id.* at 1305.  Likewise, Olivares' words had been translated from Spanish by his son, and all of the other pertinent information about the incident remained the same:  Olivares' application stated that on June 1, 2009, Chavistas came to his factory on motorcycles and attacked him, and cut him in the back before he escaped to his office on the second floor;  Olivares told the asylum officer that on

June 1, 2009, Chavistas came to his factory on motorcycles and fought with him, one of the men cut him on his back with an unknown object, and Olivares ran to his office on the second floor; and Olivares testified before the IJ that on June 1, 2009, Chavistas came to his factory on motorcycles, beat him up, and hit him on his back with an object before he ran to his office on the second floor. Like in *Kueviaoke*, "a reading of the record compels the conclusion that [the] difference in terminology is wholly immaterial." *Id.* at 1305.

The BIA's rationale for the third perceived inconsistency is likewise unconvincing. The BIA found that Olivares was not credible because he told the asylum officer that his problems began in May 2009, but he testified that his troubles became serious in February 2009. Although Olivares recalled the 2009 events out of chronological order with the asylum officer, he described the February 2009 incident to the asylum officer. Thus, contrary to the BIA's characterization, Olivares consistently stated that he received harassing phone calls in January 2009, was attacked and had the electoral cards destroyed in February 2009, and was approached by Chavistas in May 2009.

Olivares concedes that the record supports the BIA's final stated inconsistency—that Olivares failed to mention in his testimony that his attackers threw a smoke bomb at him during the May 2009 incident. Because the BIA's credibility finding is only supported by the smoke bomb omission and the BIA

7

failed to consider Olivares' corroborating evidence, we grant Olivares' petition and remand to the BIA to enable it to reevaluate its decision in light of this opinion and in light of the corroborating evidence. *See Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1280-81 (11th Cir. 2009) (rejecting two of the BIA's credibility determinations, finding that two other credibility determinations were "not as easily rejected," and remanding "to the BIA to enable the BIA or IJ to reevaluate its decision . . . and its credibility determinations in light of this opinion and in light of the medical records"); *see also Forgue*, 401 F.3d at 1287.

**PETITION GRANTED.**