[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2012
JOHN LEY
CLERK

_____

No. 11-11388

_____

Agency No. A097-636-058

YELKAL GELAHUN IDO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 10, 2012)

Before CARNES, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Yelkal Ido, an Ethiopian citizen of Oromo ethnicity, seeks review of the Board of Immigration Appeals' final order affirming the Immigration Judge's denial of his application for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A), 1231(b)(3)(A), and withholding of removal under the United Nations Convention Against Torture, 8 C.F.R. § 1208.16.  The BIA based its decision on an adverse credibility determination.  It found that Ido's statements during his interview with an asylum officer were inconsistent with his asylum application and his testimony during his removal hearing.  Ido contends that the asylum officer's notes from the interview are unreliable and the BIA should not have considered them.  He alternatively contends that, even if the notes are considered, the record compels a finding that he is credible.  Ido also contends that the BIA failed to consider corroborative evidence that he submitted to support his asylum application.

I.

On September 10, 2003, Ido filed an application for asylum, withholding of removal, and CAT relief.  In it he claimed that he was persecuted in Ethiopia because of political ties that he and his family had with the Oromo Liberation Front.  A 2007 country report for Ethiopia that Ido attached to his asylum application describes the Oromo Liberation Front as an outlawed nationalist

2

movement that has taken up arms against the Ethiopian government because of its perceived marginalization of the Oromos, the nation's largest ethnic group. Ido stated in his asylum application that he feared the danger that awaited him if he returned to Ethiopia.

In November 2006, more than four years after he arrived in the United States, an asylum officer interviewed Ido about his application for asylum. An interpreter and Ido's attorney were present during the interview. The asylum officer took short-hand notes during the interview, and he later wrote an assessment referring the case to the IJ and recommending that Ido was ineligible for asylum because he was not credible.

After a hearing, the IJ made an adverse credibility determination, finding that Ido's testimony was inconsistent, insufficiently detailed, and improbable. The IJ focused on statements Ido had made in his asylum interview that conflicted with those in his asylum application and his testimony at the removal hearing. The IJ found that there were inconsistences about the dates and details of Ido's two alleged arrests, the extent of his participation with the Oromo Liberation Front, and his explanation about returning to Ethiopia after he had fled to Djibouti in 2002. The IJ also determined that Ido did not provide sufficient corroborative evidence. He concluded that Ido was not eligible for asylum, withholding of

removal, or CAT relief.

Ido appealed to the BIA, contending that he was entitled to asylum.[1]  The
BIA dismissed the appeal, concluding that the asylum officer's interview notes
were reliable and finding no clear error in the IJ's adverse credibility
determination.  The BIA noted that in Ido's asylum interview, he said that he was
first arrested in September 1999 for passing out fliers at school in support of the
Oromo Liberation Front but that he was not harmed, and yet he testified later in
his removal hearing that he was first arrested in August 1999 and was beaten "with
a [police] baton on his back and legs."  About his second arrest for participating in
an April 2001 protest against university budget cuts that the government accused
Oromo Liberation Front members of orchestrating, Ido also gave inconsistent
statements.  The BIA noted that he told the asylum officer that the demonstration
occurred in June 2001, he was arrested in June 2002, and he was detained for two
months.  Ido testified in his removal hearing, however, that the demonstration
occurred in April 2001, he was arrested in May 2002, and he was detained for a
month.

The BIA agreed with the IJ's conclusion that it was implausible that after

---

[1] In his brief to the BIA, Ido did not make any arguments about entitlement to withholding of
removal or CAT relief.

4

that 2001 demonstration, Ido was able to escape arrest for more than a year while living at his grandparents' home and attending daily classes at his high school. The BIA also found that Ido gave inconsistent explanations about his involvement with the Oromo Liberation Front. In his asylum interview and application, he said that he was associated with the Oromo Liberation Front, organized its students at his high school, and collected contributions for its elders. Ido testified in his removal hearing, however, that he never joined that group and was only a member of the Oromo Student Association. Ido also gave inconsistent and implausible explanations about why he returned to Ethiopia in 2002 after having fled to Djibouti following his second arrest. His asylum application stated that he returned to see his mother, but he testified at the removal hearing that he returned to get an exit visa.

The BIA based its decision to affirm the denial of relief on the IJ's adverse credibility determination, stating: "Thus, we will affirm the denial of [Ido's] asylum application due to his lack of credibility. Because this issue is dispositive, we need not and decline to address the respondent's other issues on appeal." The BIA sua sponte affirmed the IJ's denial of withholding of removal and CAT relief, even though Ido's brief to the BIA had not preserved those claims. This is Ido's

5

appeal of the BIA's decision.[2]

## II.

"When, as here, the BIA issues its own opinion, we review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision." Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1304 (11th Cir. 2009). "Factual determinations, including credibility determinations, are reviewed under a substantial evidence standard, which provides that the decision can be reversed only if evidence compels a reasonable fact finder to find otherwise." Tang v. U.S. Att'y Gen., 578 F.3d 1270, 1276 (11th Cir. 2009) (quotation marks omitted). "This test requires us to view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. (quotation marks omitted). "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it." Id. (quotation marks omitted).

---

[2] We lack subject matter jurisdiction to review the BIA's denial of withholding of removal and CAT relief because Ido failed to raise those claims in his appeal to the BIA. See Sundar v. I.N.S., 328 F.3d 1320, 1323 (11th Cir. 2003) ("[W]e lack jurisdiction to consider claims that have not been raised before the BIA."); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). The BIA's sua sponte consideration of those claims does not create subject matter jurisdiction. See Amaya-Artunduaga, 463 F.3d at 1250 ("That the BIA reviewed the IJ's adverse credibility determination sua sponte does not alter our conclusion."). We do have subject matter jurisdiction over Ido's asylum claim even though he was removed from the United States after the BIA issued its order. See Moore v. Ashcroft, 251 F.3d 919, 922 (11th Cir. 2001).

An applicant "must establish eligibility for asylum by offering credible, direct, and specific evidence." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (quotation marks omitted). The applicant's uncorroborated but credible testimony by itself may be enough to establish eligibility for asylum. Id. Conversely, when there is no other evidence of persecution, an adverse credibility finding may be enough to justify the denial of relief. Id. "[S]pecific, cogent reasons" must be provided for an adverse credibility determination. Id. Even if there is an adverse credibility determination, the "BIA and the IJ must consider all evidence introduced by the applicant." Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011) (quotation marks omitted); Forgue, 401 F.3d at 1287 (explaining that corroborative evidence of persecution must be considered if it is presented, and it is not sufficient to rely solely on the adverse credibility determination in those circumstances).

III.

A.

Ido contends that the asylum interview notes that the BIA relied on to make its adverse credibility determination are unreliable and should not have been considered for these reasons: they are not complete transcriptions or a complete summary; there is no evidence that Ido or the asylum officer vouched for their

7

accuracy or completeness; and there is a mistake contained in the notes (first arrest date is recorded as 1990 instead of 1999). In determining whether statements made during interviews can be relied upon when making a credibility determination, the BIA generally requires that the record contain, at a minimum, a meaningful, clear, and reliable summary of the applicant's statements. In re S-S-, 21 I. & N. Dec. 121, 123–24 (BIA 1995). The BIA held that the asylum officer's notes in this case met that standard.

This Court has not addressed whether an asylum officer's notes from an interview can be relied upon as evidence when making a credibility determination. In the context of airport and credible-fear interviews, we have held that interview statements are reliable for credibility determination purposes so long as they "actually contradict[]" and "cannot be squared with" an applicant's later testimony. Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1050 (11th Cir. 2009) (quotation marks omitted) (applying that standard to airport interview notes); Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1345–46 (11th Cir. 2008) (accepting as reliable credible-fear interview notes). At the same time, we have cautioned against placing too much emphasis on airport interview statements when the focus is on omissions instead of contradictions between the interview statements and later testimony. See Tang, 578 F.3d at 1279; see also Shkambi,

8

584 F.3d at 1051 (explaining that "Tang recognizes that airport interviews are useful and probative in evaluating an asylum applicant's credibility, but that they must be used with care as to the nature of the variances with subsequent statements").

The asylum interview notes involved in the present case, like the airport interview notes that we held were reliable in the Shkambi case, involved statements that were contradicted by later testimony. See 584 F.3d at 1051. As in the Shkambi case, a translator was present during Ido's interview. Id. at 1043. Not only that, but Ido was represented by counsel during his interview (Shkambi apparently was not), and Ido had already been in the United States for almost four years (instead of just having arrived at the airport as Shkambi had). Cf. Diallo v. Gonzales, 445 F.3d 624, 631–33 (2d Cir. 2006) (explaining why, unlike airport interviews, asylum interviews do not require special scrutiny).

A specific regulation governs asylum interviews, and it provides that their purpose is "to elicit all relevant and useful information bearing on the applicant's eligibility for asylum." 8 C.F.R. § 208.9(b). That regulation also states that the asylum interview must be conducted "in a nonadversarial manner." Id. The applicant may have counsel present and may present witnesses, affidavits, and other evidence. Id. As we have already mentioned, Ido was represented by

9

counsel during his asylum interview, and there are no indications or allegations that the interview was conducted in any way contrary to the requirements of § 208.9.

During Ido's removal hearing, where he was also represented by counsel, the IJ gave him the opportunity to review the interview notes, and Ido did not object to their admission into evidence. In making its credibility determination, the BIA did not err by considering the notes from Ido's asylum interview.

B.

Ido contends that even if the asylum interview notes are considered reliable evidence for making the credibility determination, the record compels a determination that he is credible. He argues that the inconsistencies found by the BIA were just minor discrepancies that do not go to the heart of his claims.

Because Ido's application was filed in 2003, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (codified in scattered sections of 8 U.S.C.), does not apply. Shkambi, 584 F.3d at 1049 n.7. The REAL ID Act requires the factfinder to consider the totality of the circumstances in making a credibility determination, and it provides that the factfinder may consider any inaccuracies or falsehoods in an applicant's statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim."

10

8 U.S.C. § 1158(b)(1)(B)(iii). Before the enactment of the REAL ID Act, our precedent was unclear about whether a factfinder making a credibility determination could consider only those matters that went to the heart of the applicant's claim. Even so, we need not determine this Court's pre-REAL ID Act standard for adverse credibility determinations because the BIA focused on inconsistencies and implausibilities that do go to the heart of Ido's claim for asylum. See Shkambi, 584 F.3d at 1049 n.7 (refraining from deciding the adverse credibility determination standard for pre-REAL ID Act cases because of inconsistencies that related directly to the applicant's claims of persecution). The inconsistencies the BIA relied on involve Ido's allegations about incarceration and physical abuse by the Ethiopian government, the extent of his political affiliations, his past political activities, and whether he truly feared persecution (as evidenced by his return to Ethiopia from Djibouti).

The length of Ido's detention and whether he was beaten during it are particularly crucial facts central to Ido's claim of persecution. As for his inconsistent statements about the dates of his arrests, the BIA did not merely rely on minor discrepancies in dates to make its credibility finding; instead, it relied on

11

the lack of detail about the two arrests.[3]

Ido offers no real explanation for the significant discrepancy between his statement to the asylum officer that he suffered no physical abuse and his statements in his asylum application and hearing testimony that he was physically abused during detention. In his brief to this Court, Ido merely speculates that he might not have mentioned physical abuse during the asylum interview because he had experienced police brutality and coercion in Ethiopia, which could have led him to be less candid with American government officials. About the discrepancy between his statement to the asylum officer that after his second arrest he was detained for two months and his testimony that he was detained for one month, he asserts that the difference of one month when describing events that happened a decade ago is insignificant. The degree of physical abuse suffered (if any) and the length of time a person is incarcerated are not minor discrepancies; they are facts

---

[3] Ido's brief to this Court correctly points out that the BIA made an error of fact. The BIA held that it was implausible that Ido attended classes daily for more than a year after the Ethiopian police sought to arrest him for his participation in the April 2001 protest. The record demonstrates that Ido graduated from high school in June 2001, meaning he attended classes for, at the most, only two months after the protest. But the IJ initially made this same error, and Ido failed to challenge it before the BIA. Ido has waived any challenge to this error by failing to preserve it, but even taking account of that error, it is not enough to compel reversal in light of the record as a whole.

Ido also challenges the BIA's conclusion that he gave inconsistent dates for his first arrest: September 1999 in his asylum interview and August 1999 in his hearing testimony. Ido actually testified that he was arrested "around August 1999." If that is an inconsistency, it is a minor one, but in any event, it does not change the result here.

that are central to an asylum claim.  Even if some of the inconsistencies the BIA

recognized were minor, these were not.  The record as a whole establishes that the

inconsistencies the BIA relied on constitute substantial evidence supporting its

adverse credibility determination.  The record does not compel reversal of the

BIA's denial of asylum on that basis.

IV.

Ido also contends that the BIA failed to consider corroborating evidence

that he presented:  a State Department report, an Ethiopian arrest warrant, and

Ido's passport.  He argues that this Court must remand so that the BIA can

consider that evidence.  The BIA relied solely on the IJ's adverse credibility

determination, and there is no indication that it considered the corroborating

evidence.

An adverse credibility determination alone cannot support the denial of an

asylum application when the applicant produces other evidence of persecution, as

Ido has done.  See Forgue, 401 F.3d at 1287.  "[T]he IJ and the BIA need not

address specifically each claim the petitioner made or each piece of evidence the

petitioner presented, but they must consider the issues raised and announce their

decision in terms sufficient to enable a reviewing court to perceive that they have

heard and thought and not merely reacted."  Carrizo v. U.S. Att'y Gen., 652 F.3d

1326, 1332 (11th Cir. 2011) (quotation marks omitted). The BIA has not announced its decision in terms that are sufficient to enable us to tell whether it has considered any of Ido's corroborating evidence. See id. For that reason, we remand the case to the BIA for it to consider the corroborating evidence that Ido presented. See Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1237 (11th Cir. 2007) ("[T]he general practice in this circuit is to remand when the IJ or BIA fails to make adequate findings or give reasoned consideration to all the evidence." (quotation marks omitted)).

## V.

We deny Ido's petition insofar as it challenges the BIA's adverse credibility determination, but we grant in part Ido's petition and remand this action to the BIA so that it may consider whether Ido is entitled to asylum in light of his corroborating evidence.

**DENIED in part, GRANTED in part, and REMANDED.**

14