[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10702
Non-Argument Calendar
_____

Agency No. A201-262-452

RICHARD RAMON MARTINEZ FUENMAYOR,
JUDITH VILMA CASANOVA VILLARREAL,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 23, 2015)

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Petitioners Richard Martinez Fuenmayor and his wife Judith Casanova Villarreal, natives and citizens of Venezuela, seek review of the Board of Immigration Appeals's ("BIA") order, affirming the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition for review.

## I.  BACKGROUND

### A.    Initiation of Removal Proceedings

In April 2002, Petitioners entered the United States as non-immigrant visitors. In May 2003, Casanova and Martinez changed their statuses to H-1B (temporary worker) and H-4 (dependent of H-1B visa holder), respectively.

In August 2011, having failed to maintain their respective statuses, Martinez applied for asylum, withholding of removal, and CAT relief, listing Casanova as a derivative beneficiary.[1] The Department of Homeland Security ("DHS") subsequently issued Petitioners notices to appear, charging them with removability pursuant to 8 U.S.C. § 1227(a)(1)(C)(i), for failing to comply with the conditions of their non-immigrant statuses. At a preliminary removal hearing, Petitioners conceded removability and indicated that they intended to seek relief based on Martinez's previously-filed asylum application.

---

[1] Casanova later filed her own application for withholding of removal and CAT relief, but her application rested upon the same factual basis as Martinez's.

**B.**    **Asylum Application**

In his application, Martinez claimed that he feared harm, mistreatment, and torture if returned to Venezuela because of his political opinion and membership in a particular social group.  In particular, he stated that he was a member of the specialized police force known as the DISIP, which was responsible for the detention and arrest of President Hugo Chavez after his failed coup d'état in 1992. Martinez was also a member of the Democratic Action Party.  His application provided that he lived at the same address in Caracas, Venezuela, from 1995 until 2002.

In a statement attached to his application, Martinez explained that Chavez's 1992 arrest was the most important thing he participated in during his 12 years as a DISIP police officer.  After Chavez's release from prison, Martinez started receiving death threats and his family's apartment was robbed several times. Martinez's eldest son, Jhonrid, also received threats and was the victim of "senseless beatings and robbery" because of Martinez's involvement with the DISIP.  In 1999, Martinez and his family moved to another city.  During that same year, while Martinez was driving on the highway, a car drove by and fired shots at him.

C.    **Merits Hearing**

At a hearing before the IJ, Martinez testified about his participation in Chavez's 1992 arrest.  After Chavez's release in 1994, Martinez began receiving threatening phone calls from Chavez's allies.  With respect to the highway shooting, Martinez stated that he was on his way to a Democratic Action Party meeting, when a car sped by and "[s]ome unknown people" fired shots at him.  As to Jhonrid's attack, Martinez added that Jhonrid's assailants told Jhonrid that they knew his father was a policeman and that the beating was a message from Chavez.

During the same year as Jhonrid's attack and the highway shooting, Martinez's home was broken into and his police weapons, uniforms, and personal identification were stolen.  These incidents forced Martinez's family to move in 1994, 1996, 1999, and several times between 2000 and 2001.  Each time they moved, they continued to receive threatening phone calls.  Martinez reported these incidents to the police, but did not have any copies of the reports because they were lost during the family's moves.

On cross-examination, Martinez said that he was first threatened in 1996. He then stated that he moved in 1995 or 1996, but quickly clarified that he began receiving threatening phone calls toward the end of 1994, 1995, and 1997 through 1998.  He explained that he did not include Jhonrid's attackers' message from Chavez in his asylum application because he forgot.  With respect to the highway

4

shooting, Martinez admitted that he did not know who shot at him.  Although

Martinez was not employed by the Democratic Action Party, he served as a

security advisor and was still an active member at the time of the removal hearing.

Casanova also testified in support of Petitioners' applications for relief.  She

stated that, although her family did not know who committed the harms against

them, they knew that the perpetrators were working on behalf of Chavez.  She was

the victim of frequent, threatening phone calls.  Her son, Jhonrid, was beaten and

robbed in 1999, but she did not know who attacked him.  That same year, Martinez

was shot at because of his participation in Chavez's arrest.  Due to the harassment,

persecution, and threats, her family moved six times within Venezuela before

coming to the United States.  The police reports the family filed based on these

incidents were stolen when their home was robbed in 1998 and 1999.  On cross-

examination, Casanova stated that she took Jhonrid to the doctor after he was

beaten, but she did not have any record of his medical treatment.

### D.    IJ and BIA Decisions

The IJ denied Petitioners' claims for asylum, withholding of removal, and

CAT relief.  Citing inconsistencies between Martinez's and Casanova's testimony,

as well as omissions from Martinez's asylum application, the IJ found Petitioners

not to be credible.  The IJ also found that Petitioners failed to corroborate their

claims.  In particular, there was no evidence establishing that Martinez participated

5

in Chavez's 1992 arrest, or that he was politically involved in Venezuela or the United States.  Thus, Petitioners failed to establish that they suffered past persecution or had a well-founded fear of future persecution based on one of the protected grounds.  Even if Petitioners were deemed credible, they failed to establish a nexus between the harm they allegedly suffered and one of the statutorily-protected grounds.  The IJ also denied Petitioners' applications for withholding of removal and CAT relief.

The BIA affirmed the IJ's decision, concluding that the IJ provided specific and cogent reasons for the adverse credibility determination, and that the record supported those reasons.  The BIA further determined that Petitioners did not submit sufficient corroborating evidence to meet their burden of proof in the absence of credible testimony.  The BIA also agreed with the IJ's denial of Petitioners' applications for withholding of removal and CAT relief.  Finally, the BIA construed the attachment of Jhonrid's medical report to Petitioners' appellate brief as a motion to remand, but denied the motion because Petitioners failed to establish a reasonable likelihood that their applications for relief would succeed on the merits.

## II.  DISCUSSION

On appeal, Petitioners make the following arguments:  (1) substantial evidence did not support the IJ and BIA's adverse credibility determination; and

(2) they met their burden of proof for establishing eligibility for asylum, withholding of removal, and CAT relief through their credible testimony and corroborating evidence.[2]

## A.    Standard of Review

We review the BIA's decision as the final judgment, unless the BIA has expressly adopted the IJ's decision, in which case we review both decisions. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1330 (11th Cir. 2011).  We also review the IJ's decision to the extent that the BIA adopted its reasoning or found the IJ's reasons to be supported by the record.  *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  Here, because the BIA issued its own opinion, we review the BIA's decision.  But because the BIA also agreed with several of the IJ's findings, we will review the decision of the IJ to the extent of that agreement.  *See id.*

We review factual findings, including credibility determinations, for substantial evidence.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005).  Under the substantial evidence test, we must affirm a determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quotation omitted).  We view the evidence in the light

---

[2]  Petitioners abandoned any argument related to the BIA's denial of their motion to remand by not providing sufficient legal and factual argument in their brief on appeal. *See Mohammed v. Ashcroft*, 261 F.3d 1244, 1248 n.3 (11th Cir. 2001).

most favorable to the agency's decision, drawing all reasonable inferences in favor of that decision. *Id.* In other words, we cannot overturn a finding of fact unless the record compels it. *Id.* at 1287.

### B.    Adverse Credibility Determination and Burden of Proof

An applicant for asylum must meet the Immigration and Nationality Act's ("INA") definition of a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who cannot return to his or her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). To establish eligibility for asylum, an applicant must demonstrate either past persecution, or a well-founded fear of future persecution, based on a statutorily-listed factor. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). If the applicant demonstrates past persecution, there is a rebuttal presumption that he has a well-founded fear of future persecution. *Id.*

To qualify for withholding of removal, an applicant faces an even more daunting challenge. He must establish that his life or freedom *would* be threatened in his country of origin on account of a protected ground. 8 U.S.C. § 1231(b)(3). The burden is on the alien to show a clear probability of future persecution, meaning that it is "more likely than not" that he will be persecuted or tortured if returned to his country. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232

8

(11th Cir. 2005).  This standard is more stringent than the "well-founded fear" standard for asylum.  *Id.*

In order to succeed on a CAT claim, the applicant "must demonstrate it is more likely than not that [he] will be subjected to pain and suffering at the hands or acquiescence of the government."  *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010).  If an applicant is unable to meet the lower burden for asylum relief, he is generally precluded from establishing eligibility for withholding of removal or CAT relief.  *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1293, 1303–04 (11th Cir. 2001).

An applicant's testimony, if credible, alone can be sufficient to sustain the applicant's burden of proof, even without corroborating evidence.  *Forgue*, 401 F.3d at 1287; 8 U.S.C. § 1158(b)(1)(B)(ii).  "If, however, the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances."  *Forgue*, 401 F.3d at 1287.

Pursuant to the REAL ID Act of 2005, the IJ is to consider the totality of the circumstances in making a credibility determination, including:  (1) the applicant's demeanor, candor, or responsiveness; (2) the plausibility of the applicant's account; and (3) inconsistencies, inaccuracies, or falsehoods related to the applicant's statements, witnesses' statements, and other evidence in the record,

regardless of whether they relate to the heart of the applicant's claim.[3] 8 U.S.C. § 1158(b)(1)(B)(iii).  "Once an adverse credibility finding is made, the burden is on the [applicant] to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Ruiz*, 440 F.3d at 1255 (quotations and alteration omitted).  The fact that the applicant provides "tenable" explanations for the doubtful portions of his testimony does not compel reversal, particularly in the absence of corroborating evidence.  *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006).

Here, the IJ and BIA provided specific, cogent reasons for the adverse credibility determination, citing a number of inconsistencies and discrepancies between Martinez's and Casanova's testimony at the removal hearing and between their testimony and Martinez's asylum application.  Specifically, the IJ and BIA relied on:  (1) an inconsistency between Petitioners' testimony and Martinez's asylum application related to whether they moved several times within Venezuela or lived at one address; (2) an inconsistency between the testimony given by Petitioners regarding the identity of Jhonrid's attackers; (3) an omission from Martinez's asylum application related to Jhonrid's attackers' purported message from Chavez; and (4) an inconsistency between Petitioners' testimony regarding

---

[3]  Because Petitioners' asylum application was filed after May 11, 2005, it is subject to the REAL ID Act of 2005.  *See* Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 303, 305.

who was responsible for the highway shooting, as Martinez admitted on cross-examination that he did not know who shot at him.  The IJ and BIA also found implausible Petitioners' testimony that the evidence that would support their claims—police reports and medical documentation—was stolen out of their home or lost during their moves, especially because Petitioners could not explain why they were able to submit other documentary evidence, including Martinez's diplomas and awards from the DISIP.

On this record, we conclude that the IJ and BIA's adverse credibility determination was supported by substantial evidence.  *See Forgue*, 401 F.3d at 1286.  Petitioners attempt to explain some of the doubtful portions of their testimony on appeal.  Specifically, they contend that Martinez's failure to include the message from Jhonrid's attackers in his asylum application was an honest mistake.  Further, the address listed in Martinez's asylum application was Petitioners' permanent address, as they did not provide the addresses from each of their moves because those addresses were only temporary.  The fact that Petitioners provide "tenable" explanations for doubtful portions of their testimony does not, however, compel the conclusion that they were credible.  *See Chen*, 463 F.3d at 1233.

Petitioners also argue that they met their burden of proof for establishing eligibility for relief because they submitted sufficient corroborating evidence to

show that Martinez participated in Chavez's arrest.  In support of their claims, Petitioners rely on internet articles about the DISIP and Mario Rocco, an individual who Martinez claims was his colleague and suffered persecution for being involved in Chavez's 1992 arrest.  The articles show that Rocco and other unidentified DISIP officers prevented Chavez's attempted coup and that Rocco faces possible extradition to Venezuela.  However, the articles do not connect Martinez to Chavez's arrest.  Martinez's documentary evidence showing that he worked for DISIP likewise only connects him to the agency; it does not establish that he participated in Chavez's arrest.  Additionally, the 2011 Country Report states that several individuals were being held as political prisoners in Venezuela, but it does not individually corroborate Martinez's claim that he was personally involved in Chavez's arrest.  *Cf. Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1346 (11th Cir. 2008) (concluding that general evidence showing that human rights abuses occur in a country was not specific to petitioner, and thus did not establish that petitioner had a well-founded fear of future persecution).

Petitioners' claims hinged on their contention that the harm they suffered was a result of Martinez's participation in Chavez's arrest and his involvement in the Democratic Action Party.  In light of the adverse credibility determination and Petitioners' failure to provide sufficient corroborating evidence, the record does not compel a finding that Jhonrid's attack or the highway shooting were related to

12

either Martinez's involvement in the 1992 attempted coup, or his political activities.  Thus, substantial evidence supports the agency's finding that Petitioners failed to establish past persecution.  *See Forgue*, 401 F.3d at 1286.  Furthermore, the only evidence Petitioners rely upon to argue that they have a well-founded fear of future persecution is the internet article relating to Mario Rocco.  Because that article does not establish that Martinez participated in Chavez's arrest, the record does not compel reversal of the IJ and BIA's determination that Petitioners failed to establish a reasonable possibility that they would face future persecution.  *Id.*

In short, substantial evidence supports the IJ and BIA's denial of Petitioners' asylum application.  *Id.* at 1286–88 (concluding that substantial evidence supported the denial of petitioner's asylum application due to adverse credibility determination and lack of corroborating evidence).  Given that Petitioners failed to establish eligibility for asylum, which carries a lower burden of proof, they likewise failed to establish eligibility for withholding of removal and CAT relief.  *See Al Najjar*, 257 F.3d at 1292, 1303–04.[4]  Accordingly, we deny the petition for review.

**PETITION DENIED.**

---

[4]  On appeal, Petitioners improperly cite to internet articles that are not part of the record to support their claim that they are entitled to CAT relief.  *See* 8 U.S.C. § 1252(b)(4)(A) (requiring the appellate court to review the petition based only on the administrative record).