[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15439
Non-Argument Calendar
_____

Agency No. A209-998-011

SAIFUL ISLAM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 6, 2018)

Before WILLIAM PRYOR, NEWSOM and JULIE CARNES, Circuit Judges.

PER CURIAM:

Saiful Islam petitions for review of an order that affirmed the denial of his

applications for asylum, withholding of removal, and protection under the

Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. 8 U.S.C. §§ 1158(b), 1231(b)(3). Islam challenges the denial of his fourth motion for a continuance. Islam also challenges the finding of the Board of Immigration Appeals and the immigration judge that he failed to provide credible evidence that he was a native and citizen of the People's Republic of Bangladesh or that he suffered past persecution or feared future persecution on account of his political opinion. We deny Islam's petition.

We review the denial of a motion for a continuance for abuse of discretion, *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1285 (11th Cir. 2008), under which our "review is limited to determining whether . . . [there has been an exercise of administrative] discretion in an arbitrary or capricious manner," *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). We review the decision of the Board to determine whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1330 (11th Cir. 2011) (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001)). "[F]actual determinations, including credibility determinations, . . . can be reversed only if the evidence compels a reasonable fact finder to find otherwise." *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (internal quotation marks and citation omitted). When the Board adopts

2

the reasoning of the immigration judge, we also review the decision of the immigration judge. *Carrizo*, 652 F.3d at 1330.

We cannot say that it was arbitrary and capricious to deny Islam's fourth motion to continue. Islam offered no "good cause," *see* 8 C.F.R. § 1003.29, to justify another delay in his removal proceeding. In February 2017, the immigration judge informed Islam of his right to counsel, gave him a list of organizations that could provide legal assistance, and continued his hearing for more than a month. The immigration judge granted Islam three additional continuances, warned him that the absence of counsel would not delay his removal proceedings, and scheduled Islam's removal hearing for June 21, 2017. The morning of Islam's removal hearing, attorney Zubaida Iqbal moved for a continuance on the ground that she had been hired the day before and needed time to prepare, but Iqbal had entered a notice of appearance in Islam's proceeding in April 2017 and represented him at his bond hearing. And Iqbal's motion to continue was identical to the one she filed before Islam's bond hearing. The immigration judge did not abuse his discretion by refusing to further delay Islam's removal hearing when Iqbal failed to appear at the hearing or to explain in her motion why a continuance was necessary when she was familiar with Islam's case and the documents relating to his applications for relief. *See Chacku*, 555 F.3d at, 1285.

3

Substantial evidence supports the finding that Islam failed to provide credible evidence of his identity. To be eligible for asylum and withholding of removal, an alien must submit specific and credible evidence that he is a citizen and national of the country from which he seeks refuge. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005); *Matter of O-D-*, 21 I. & N. Dec. 1079, 1081 (BIA 1998). Islam failed initially to produce any identification, and the identification card that he later submitted appeared to be fraudulent. The paper card had been laminated twice, and Islam's identification number failed to match a national in the database created by the government of Bangladesh. Islam testified that he lost his passport while traveling to the United States and that his parents were unable to send him his identification records because their home was "vandalized" and they were "[un]able to go home," yet he failed to produce any evidence to corroborate that he had obtained a passport from Bangladesh or that his family's home was inaccessible. *See Chen*, 463 F.3d at 1231. Islam argues that he should have been given an opportunity to address the validity of his identification card and that the government violated a regulation during his removal hearing by submitting a printout from the Bangladeshi database without having it translated into English, but we lack jurisdiction to consider arguments that Islam failed to present to the immigration judge or raise in his appeal to the Board. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

4

Substantial evidence also supports the finding that Islam's claim of past persecution and fear of future persecution was not credible, and the Board and the immigration judge provided specific, cogent reasons to support that finding. *See Chen*, 463 F.3d at 1232. Islam gave inconsistent accounts about when and how many people attacked him for being an "ordinary member" of the Liberal Democratic Party. Islam stated in his application that he was attacked on March 26, 2015, June 6, 2015, and July 3, 2016, but later he testified that the last two attacks occurred on July 3, 2015, and on June 6, 2016. Islam's application stated that the first incident involved an unspecified number of persons beating him with wooden sticks, the second incident involved 10 assailants, and the third incident involved four people beating him with hockey sticks, but later Islam testified that the first incident involved 10 assailants, the second incident involved an unspecified number of persons, and the third incident involved 10 or 12 assailants. And Islam gave differing accounts about where the incidents occurred. Islam initially testified that he moved to Dhaka after the first attack, but when questioned by the immigration judge, Islam recanted his testimony and said that he moved to Dhaka after the second attack. Islam offers no explanation for these and other inconsistencies that would compel a reasonable fact finder to reverse the adverse credibility finding and conclude that he established eligibility for asylum or for withholding of removal. *See id.* at 1231.

5

Islam does not qualify for relief under the Convention. Islam had to prove that it is more likely than not that "he . . . would be tortured if removed to the proposed country of removal," *Al Najjar*, 257 F.3d at 1303 (quoting 8 C.F.R. § 208.16(c)(3)). Because Islam cannot satisfy the standard to obtain asylum or withholding of removal, he necessarily fails to qualify under the more stringent standard imposed for relief under the Convention. *Forgue*, 401 F.3d at 1288 n.4.

We **DENY** Islam's petition for review.