[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19–11984
_____

Agency No. A216-171-928

KAGENDRAN RATNAM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 20, 2020)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

The Board of Immigration Appeals (BIA) denied Petitioner Kagendran Ratnam's application for asylum, 8 U.S.C. § 1158(b)(1)(A), and for withholding of removal under the Immigration and Nationality Act (INA), 8 C.F.R. § 208.16(c)(2), and under the Convention Against Torture (CAT), 8 C.F.R. § 208.18(a). The BIA

specifically affirmed the immigration judge's adverse credibility determination, which found that Ratnam's testimony was not credible and that the documents he submitted to prove his identity were unreliable. Ratnam petitioned this Court for review. After briefing and with the benefit of oral argument, we deny the petition.

**I.**

On March 17, 2018, Ratnam attempted to enter the United States without valid entry documents in violation of INA § 212(a)(7)(A)(i)(I). 8 U.S.C. § 1182(a)(7)(A)(i)(I). In response to removal proceedings, Ratnam filed an application for asylum and for withholding of removal under the INA and the CAT, and a hearing was set. Before the hearing, both Ratnam and the government submitted various documents about Ratnam's identity, including demographic information, and about the current conditions for Tamils in Sri Lanka.

According to Ratnam's testimony at the hearing, he was born in Sri Lanka and is ethnically Tamil; the Sri Lankan army killed his sister, brother, and father; the Sri Lankan army beat him while interrogating him on two occasions; and during the second interrogation, the Sri Lankan army also beat his mother, breaking her hand, and then detained him, removed one of his toenails, and held a gun to his head. Other record evidence cast doubt on that testimony. For example, it suggested that Ratnam's sister committed suicide; that his brother died in a car accident; and that

2

his father died in an accidental drowning. In Ratnam's asylum application, he did not mention the toenail removal.

Ratnam also testified about his journey from Sri Lanka to the United States, in which he asserted he used the passport in the record. At first, he said that he flew from Sri Lanka to Turkey, from Turkey to Haiti, and then from Haiti to the Bahamas. In the Bahamas, he got on a boat that took him to the United States. He explained that he had been locked in a house in Haiti for six months and averred that he had been in no other countries. However, on cross examination, Ratnam stated that he was deported from Haiti the same day that he arrived and that he spent time in Colombia and Panama. He then returned to Haiti, where he stayed for around a week before flying to the Bahamas. Although Ratnam admitted that he had interacted with immigration officials in both Panama and Columbia, there were no entry or exit stamps from either country in his passport.

Further discrepancies emerged. The name typed in Ratnam's passport differs from the name written on the back of the passport where his address is listed. Also, the name in Ratnam's passport did not match the name that Ratnam's mother or the Justice of the Peace used in their separate letters. And it appeared to be spelled

3

differently from the name on his driver's license, though that name was almost illegible. There was also inconsistency and confusion around his father's name.

After the hearing, the immigration judge denied Ratnam's application for asylum and withholding of removal in a written decision. The immigration judge found that Ratnam had not proven with credible evidence that he was a Sri Lankan Tamil and also made a general adverse credibility determination that Ratnam's testimony was not credible. The immigration judge explained that because Ratnam's testimony was not credible and his "personal documents" were not reliable, the remaining evidence failed to show his eligibility for asylum or withholding of removal.

Ratnam timely appealed to the BIA. Ratnam argued that the immigration judge's credibility determination was erroneous but did not challenge any specific inconsistency on which the immigration judge relied in reaching that credibility determination. The BIA affirmed the immigration judge's decision, upholding his credibility determination under a clear-error standard and explaining that without credible testimony, Ratnam could not meet his burden to show eligibility for asylum

4

or withholding of removal. Ratnam timely petitioned this Court for review, and we granted his motion for a stay of removal.

## II.

We review the BIA's legal conclusions *de novo*, *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019), and its factual findings under the "highly deferential substantial evidence test," *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). Under that test, the BIA's factual findings "are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude the contrary.'" *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B)). When the BIA affirms the immigration judge's credibility determination on clear-error review, we assess the immigration judge's reasoning. *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1278 (11th Cir. 2020), *see also Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230 (11th Cir. 2006) ("Insofar as the BIA adopts the [immigration judge]'s reasoning, we review the [immigration judge]'s decision as well."). We may only reverse the immigration judge's credibility determination if—"view[ing] the record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision," *Adefemi*, 386 F.3d at 1027—the record "not only supports

[an alternate credibility determination], but compels it," *INS v. Elias-Zacarias*, 502 U.S. 478, 480 n.1 (1992).

### III.

The INA gives the Attorney General discretion to grant asylum to applicants who qualify as "refugee[s]" under 8 U.S.C. § 1101(a)(42). The applicant bears the burden of showing his refugee status. 8 U.S.C. § 1158(b)(1)(B)(i). To establish that status, the applicant must present credible evidence establishing that "(1) he was persecuted in the *past* 'on account of race, religion, nationality, membership in a particular social group, or political opinion' (together, 'protected grounds'), or (2) he has a 'well-founded fear' of persecution in the *future* 'on account of' any of his protected grounds." *Lingeswaran*, 969 F.3d at 1286 (first citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1); and then citing 8 C.F.R. § 208.13(a), (b)).

Ratnam argues that he is eligible for asylum because the Sri Lankan government persecuted him in the past and would persecute him in the future because he is an ethnic Sri Lankan Tamil.[1] To prove that he is Tamil, he presented documents and his own testimony. The immigration judge found the documents unreliable and the testimony not credible. We conclude that the record does not

---

[1] Although the BIA did not reach Ratnam's arguments about the persecution of ethnic Tamils, it has considered and rejected similar claims before. *See Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1290-91 (11th Cir. 2020) ("The BIA concluded that [the applicant's] fear was not objectively reasonable because he did not show … that the Sri Lankan government routinely persecutes Tamils.").

compel a finding that Ratnam's testimony was credible nor that the submitted documents were reliable. Accepting the immigration judge's findings, we deny the petition.

We cannot say the immigration judge lacked substantial evidence in finding the documents unreliable. To prove his identity as a Tamil, Ratnam submitted a purported Sri Lankan driver's license and passport, as well as letters purportedly from his mother, a Justice of the Peace who knew his family, and his divisional secretary in Sri Lanka. As an important backdrop, the immigration judge found that "document fraud is prevalent in Sri Lanka, especially in Colombo, which is where [Ratnam] testified that he spent time" immediately before he left Sri Lanka. And here, the driver's license was not authenticated, and the name on it was either spelled differently than the name on Ratnam's passport or was illegible. The name typed on the first two pages of Ratnam's passport was spelled "Kagendran," but the name written on the back of the passport was spelled "Kagandran." And the name in his passport also differed from the name used in the letters of Ratnam's mother and the Justice of the Peace. Further casting suspicion on the passport, it lacked any travel stamps from Colombia or Panama, even though Ratnam testified that he flew through both of those countries on his way to the United States and interacted with immigration officials in those countries. Finally, the father's name in the Justice of the Peace's letter was different from the name given in Ratnam's asylum

7

applications and during his testimony. Because of inconsistencies internal to the documents and contradictions between the documents and Ratnam's testimony, the immigration judge found that the documents were unreliable. We cannot conclude that the immigration judge's finding in this respect is unsupported by substantial evidence.

We also cannot conclude that the immigration judge lacked substantial evidence in finding Ratnam's testimony not credible. Apart from identification documents, the only other evidence Ratnam presented supporting his claim to be a Sri Lankan Tamil was his own testimony. An applicant's testimony "may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). Here, Ratnam's testimony was riddled with contradictions and inconsistencies: Ratnam said that the Sri Lankan Army murdered his father, sister, and brother, but evidence in the record, including death records and a family-friend's account, suggests that the sister committed suicide, the brother died in a vehicle accident, and the father accidentally drowned. At first Ratnam testified that he traveled only to Haiti, the Bahamas, and Turkey on his way to the United States, and that he spent six months "locked … in a house" in Haiti, yet during cross examination he admitted that he had in fact been deported from Haiti the day he

8

arrived and had spent time in Colombia and Panama. When Ratnam first testified about his interaction with the Sri Lankan army, he did not mention that they put a gun to his head, but later added that detail at his attorney's prompting. Ratnam first testified that the Sri Lankan army broke his hand and his mother's hand but later admitted that they had not broken his hand.

Ratnam does not deny that those inconsistencies exist. Instead, he argues that "there can be various reasons … for the absence of entry stamps" on his passport; that perhaps transliteration errors caused the names to be spelled differently; that the "common sense answer" about the father's death is that the "government issued death certificate" would not say that the Sri Lankan Army had killed him; and that the translator at Ratnam's hearing must have made a mistake in interpreting his story about the army breaking his and his mother's hands. But, even assuming those explanations are reasonable, our precedent does not require an immigration judge to accept reasonable explanations of discrepancies and find that an applicant is credible. *See Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1051 (11th Cir. 2009) ("Although Shkambi offered his fear as an explanation for these omissions and inconsistencies, that explanation does not compel a conclusion that Shkambi was credible."); *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (holding that even if an asylum applicant offers tenable explanations for record-

inconsistencies, those explanations do not compel reversal of the immigration judge's adverse credibility determination).

Because the record as a whole does not compel an alternative credibility finding, we must accept the immigration judge's credibility determination, which leaves us with no credible evidence that Ratnam is a Sri Lankan Tamil. All of Ratnam's arguments that he was, or will be, persecuted because of a statutorily protected ground require him to be Tamil.[2] Without credible evidence that he is Tamil, Ratnam cannot meet his burden to establish eligibility for asylum or withholding of removal. *See* 8 C.F.R. §§ 1208.13(a), 1208.16(b); *see also Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 (11th Cir. 2005) ("Because Forgue has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT." (citation omitted)).

## IV.

Substantial evidence supports the BIA and immigration judge's adverse credibility determination, which forecloses Ratnam's claims for asylum and withholding of removal. Ratnam's petition for review is **DENIED**.

---

[2] Ratnam also argues that he has a fear of persecution upon removal because he is a failed asylum seeker. But he concedes that this additional claim must be considered "in conjunction with" his Tamil ethnicity and argues that the BIA erred in considering his failed-asylum-seeker argument independently of his Tamil ethnicity. Because of the immigration judge's credibility finding about Ratnam's Tamil ethnicity, Ratnam's argument that he is likely to be persecuted as a failed asylum seeker also fails.